**John Glenn RHODES, Appellant,**

v.

**Patsy Williams GILPIN, and Patsy Williams Gilpin as mother and next friend of John Glenn Rhodes, Jr. and George W. Rhodes, Minors, Appellees.**

No. 5073.

District of Columbia Court of Appeals.

Argued March 23, 1970.

Decided April 27, 1970.

264 A.2d—32

Andrew A. Lipscomb, Washington, D. C., for appellant.

William A. Mann, Washington, D. C., for appellees.

Before HOOD, Chief Judge, KERN, Associate Judge, and QUINN, Associate Judge, Retired.

KERN, Associate Judge:

Appellant and appellee were divorced in Nevada in 1951 and each subsequently remarried. In 1963 the Court of General Sessions, upon application by appellee, entered an order directing appellant to pay her $125 per month "for the support and maintenance of * * * [their two] minor children."[1] In February 1966, one of the children became 21 and appellant halved his monthly payments to appellee for the next three months. Thereafter, he *ceased* making regular monthly payments. In October 1967 appellee moved the trial court to hold appellant in contempt. Appellant filed an answer under oath which he denominated "Affidavit" and in which he stated that one of his sons had reached majority and that he had suffered a severe drop in his income as real estate salesman causing him to "fall behind in his payments." Appellant requested that "[i]n view of the above statements * * * the support payments be substantially reduced or eliminated."

At the hearing on the contempt motion both appellee and appellant, who appeared *pro se* because he said he was unable to afford an attorney, testified that during the prior year their older son had reached the age of 21. Nevertheless, the trial court

---

1. The Nevada divorce decree had incorporated a property settlement agreement between the parties pursuant to which appellant was to pay appellee $50 each month for the support of the two children of their marriage. Appellee alleged that changed circumstances required increased support for the children.

refused to reduce the amount of monthly support it had awarded in 1963 for both children, and held appellant in contempt for failure to maintain his payments. He was sentenced to imprisonment but his sentence was stayed upon payment of his arrearage of $2160 in an immediate lump sum of $500 and the balance in installments of $10 per month in addition to his regular monthly payment of $125.

Appellant filed a Motion for Rehearing which drew an opposition from appellee and triggered the filing by the parties, back and forth, of a number of pleadings. Finally, the trial court held a further hearing in February *1969*—36 months after the parties' older son became 21 and some 16 months after appellee had moved to have appellant held in contempt. After testimony by the parties the trial court entered an order, vacating its 1963 order insofar as it directed appellant to support the adult child, but requiring appellant henceforth to pay $50 biweekly for the support of his other son and awarding $350 counsel fees to appellee's attorney.

■ Appellant does not challenge the modified order insofar as it directs that henceforth he pay $50 every two weeks for his minor son, who will become 21 this year. He does contend[2] on this appeal, however, that the trial court's failure to modify the 1963 support order as of February 1966 was error on either of two grounds: (1) because his older son had reached his majority then, and (2) because the parties had agreed that he need pay only one-half of $125, beginning in February 1966.

■ Whether or not the parties ever agreed to reduce the support payment as of February 1966 was in dispute. The trial court found upon conflicting testimony that there was no such agreement and we cannot conclude on this record that such

finding is clearly erroneous, D.C. Code 1967, § 17–305(a). It therefore is unnecessary to decide whether a valid agreement between the parties could have superseded the court order of September 10, 1963.

■ As to the effect of one minor child reaching his majority upon a support order, the weight of authority is that when a support order specifies a single, undivided sum to be paid for the support of more than one minor child, "the emancipation of one child does not automatically affect the liability of the parent for the full amount." Delevett v. Delevett, 156 Conn. 1, 4, 238 A.2d 402, 404 (1968), and cases cited therein.

The reason for considering a single amount to be paid periodically for the support of more than one child as not subject to an automatic pro rata reduction is two-fold. First, a child support order is not based solely on the needs of the minor children but takes into account what the parent can afford to pay. * * * Consequently, a child support order may not accurately reflect what the children actually require but only what the parent can reasonably be expected to pay. To allow an automatic reduction of an undivided order would be to ignore the realities of such a situation. Second, to regard an undivided child support order as equally divisible among the children is to ignore the fact that the requirements of the individual children may vary widely, depending on the circumstances. * * * [156 Conn. at 4, 238 A.2d at 404.]

■ The District of Columbia courts have "no authority to modify or remit payments [under a support order] that *became due after* the child was emancipated and *before the motion* [to modify the order] was filed." Brown v. Brown, 92 U.S.App. D.C. 319, 320, 205 F.2d 720 (1953) (empha-

---

2. Appellant also contends that the amount of counsel fees awarded by the trial court was unreasonable. We do not consider the trial court's award of $350 unreasonable and an abuse of discretion, considering the services performed by appellee's counsel over the years during which this litigation has dragged on.

sis added). Neither can the court *retroactively* consider a claim by the husband that changed circumstances make continuation of payments difficult.

> When the order of support was entered, appellant was bound to obey it until it was modified by the court. * * * If appellant felt that because of physical disability, or for any other reason, he was not able to comply with the order, he should have applied to the court for a modification of the order. * * * This he did not do.

Scott v. Scott, D.C.App., 220 A.2d 95, 96 (1966), aff'd, 127 U.S.App.D.C. 245, 382 F.2d 461 (1967). However, once an application for modification is *filed* with the court, it "may in its discretion reduce or cancel, at a later date, periodic installments of payments for maintenance *as of the date when application for such relief is made.*" Fioravanti v. Fioravanti, 98 U.S. App.D.C. 23, 231 F.2d 776 (1956) (emphasis added).

■ When these principles are applied to the facts of this case, the November 9, 1967 order finding an arrearage of $2160 must stand.

■ We believe, however, that the trial court should have deemed appellant's "Affidavit" filed in answer to appellee's motion to hold him in contempt sufficient to constitute a motion or application for modification of the support order. Although inartfully phrased and containing irrelevant allegations, it does request that "the support payments be substantially reduced or eliminated," and alleges in support thereof his curtailed income and the majority of his eldest son.[3] From October 23, 1967, the date the trial court should have considered reducing the 1963 support order, to February 28, 1969, the date it reduced appellant's payment to $108 per

month, appellant was required to pay $125 per month for *two* children. There were 16 payments during this period of time. We are not suggesting that the trial court was compelled to reduce by half those 16 payments; to the contrary, it could have concluded that during this time the appellee was entitled to increased support for the remaining minor child. However, there is nothing in the record to indicate that the trial court ever considered the question. We also note that there is no evidence before us that appellee required *more*, or even the same, support for the minor child *prior* to February 28, 1969, than she did *after* that date.

In order to insure a speedy resolution of an issue which should have been resolved in October 1967, we hereby remand this case to the trial court with directions to hold an *expedited* hearing to determine the following questions:

1. How much support should appellant have been required to pay during each of the 16 months between October 23, 1967, and February 28, 1969?

2. Should appellant be required to maintain his payments of the arrearage at the present level after the parties' remaining minor child, George W. Rhodes, reaches the age of 21 years?

The trial court is directed to prepare *promptly* findings of fact and conclusions of law, GS Dom.Rel. Rule 7, and an order setting forth:

1. The amount of support that appellant should have been required to pay between October 23, 1967, and February 28, 1969 (16 calendar months);

2. the amount, if any, of his overpayment during that period, which is to be credited to his arrears;

3. the date that support for the minor child George W. Rhodes shall terminate by

---

3. There is no suggestion that appellee failed to receive a copy of appellant's "Affidavit" prior to the 1967 hearing. To the contrary, appellee's counsel referred to it

during that hearing, and further, it was already part of the docket when appellee filed her motion with the court two weeks after mailing a copy to appellant.

reason of his attaining the age of 21 years; and

4. the amount that appellant will thereafter be required to pay per month on the balance of his arrearage.

Pending final disposition of this appeal, appellant shall continue to pay to appellee support for the minor child in the amount of $50 biweekly, and $10 monthly on the balance of his arrears. We will retain jurisdiction of this case.

Remanded for further proceedings in accordance with this opinion.