No. 47,296

S. L. Salem, *Appellant,* v. V. J. Salem, *Appellee.*

(522 P. 2d 336)

Opinion filed May 11, 1974.

*Gerald W. Scott,* of Blair, Matlack, Rogg, Foote & Scott, P. A., of Wichita, argued the cause and was on the brief for the appellant.

*Hal H. Lockett,* of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: In February, 1972, the trial court granted a default divorce to the plaintiff wife, deferring its decision on child support, alimony, division of property, and attorneys' fees to a later date. The wife appeals from a judgment on those matters entered following the deferred hearing on May 11, 1972. She claims the trial court erred in making a division of property without hearing evidence, in its construction of K. S. A. 1973 Supp. 60-1610 (*b*), and in granting an excessive portion of the marital estate to the defendant.

The plaintiff's opening statement, highly summarized, revealed the following: The parties were married in 1948 while both were students at Wichita University. In 1949 they moved to New York City where defendant attended Columbia University, from which he received his BS degree in English in 1952. The parties then returned to Wichita where defendant was employed by the Boeing

Company. In 1956 the family moved to California where defendant went to work for the Douglas Aircraft Company. In 1962 defendant terminated his employment with Douglas Aircraft, and he remained unsalaried until 1970. In 1964 the family returned to Wichita. Six children were born to the union, five of whom remained in the home at the time of the divorce. In 1968 the defendant received a master's degree from Kansas State Teachers College of Emporia, and he worked on a doctorate at the University of Oklahoma in the year 1969. In 1970 he became an instructor at the Butler County Community Junior College. At the time of the trial the defendant was teaching at Friends University at an annual salary of $8,889.60.

From 1951 to the date of the filing of the petition for divorce in 1971, the defendant's total earnings were $67,750. Other than this amount the family was supported by the wife's income derived through gifts from her father. Her income from 1955 to the filing of the divorce action in 1971 totaled $390,288. Counsel detailed the source of these funds and stated the funds were applied to the support of the family.

At the time the petition of divorce was filed the parties had $4,355.47 in checking accounts and $6,749.77 in savings accounts. The plaintiff owned 138,911 shares of Raymond Oil Company stock which had been purchased from her funds at a total cost of $86,000. She also owned an interest in two oil leases which were in the process of being developed. The parties owned two automobiles, a 1968 Oldsmobile and a 1959 Ford Thunderbird; their home, appraised at $60,000; and their household furnishings and personal belongings.

Counsel for the defendant agreed the facts disclosed in plaintiff's opening statement were essentially correct. He did point out, however, that defendant's parents had passed away and defendant had acquired at the time of their passing $9,000 in insurance proceeds and $3,000 in a savings account which became a part of the marital property. At the close of the opening statements the following occurred:

"THE COURT: Well, before you start, I'm a little bit surprised from the opening statements as to what counsel had in mind. Now, I certainly don't see any point in going back here—I'm not going to take a running account of business investments for twenty-four years and trace it through and argue as to who was the smartest and who wasn't, who made the money and who did not, who had better judgment and who did not. We've had the divorce case here. We're here today to do one thing, that is divide the property equitable pursuant to law. To do that all we've got to know is what the property consists of and what each party thinks they're entitled to. I certainly don't intend

to proceed here as if we were splitting up a business partnership after twenty-four years and tracing assets. I'm interested in what they have now, not what they had in 1948 or 1953, because that's not what I'm dividing.

"Now in that line, can you stipulate as to what property there is in the estate?

"Mr. Scott: I am confident we can stipulate as to what property is there. The only evidence—and I'm not going through a great expanse—the only evidence that I want to show the Court is what of Mrs. Salem's money has been used over the years, and that it was the origin of what property they have now; and that's in two schedules, or it would actually be three schedules, a gift schedule, an income from the—just a summary by years of income from the parties, and then what has been paid out on these on Shirley Salem's account for personal draws only what went to the Salems for their personal living. Those three schedules show what I think the Court needs to know in dividing the property. That Mrs. Salem did support the family basically for the last ten years. That she did give her husband this fine education and that it was her money that acquired the properties that they have now. And those are just matters of record and they're simple compilations or summaries by an accountant who is here to testify that he made them. And that's about all his testimony is going to be, the accountant for Raymond Oil Company, to just introduce and lay the foundation for the records from which they are taken, and the accountant summarized it from that."

The parties then stipulated the marital estate was in accord with the statement of plaintiff's counsel. The parties also stipulated the book value of the Raymond Oil Company, Inc., stock as of August 30, 1971, was approximately ninety-six cents per share; that if Francis Raymond were permitted to testify he would state there was little or no market value for the stock and if he were to purchase the same he would pay approximately forty cents per share. It was further stipulated the Raymond Oil Company, Inc., had made an offer to purchase the stock of other stockholders at one dollar per share upon the basis of a promissory note payable over a period of thirty-six months at no interest. It was also stipulated that if Francis Raymond and Michael Raymond were to testify they would state the oil leases owned by Shirley Salem had little or no value.

After the court announced there was no need to introduce evidence, counsel for the plaintiff submitted Exhibits 1 through 12 which, among other things, included accounting sheets showing the income of the parties during the marital years. Counsel for each of the parties then proposed a division of property. It was the position of the plaintiff that she was entitled to the whole of the assets in the marital estate since they were accumulated from her separate funds. The only concession plaintiff would make was to

permit defendant to retain $2,000 of about $11,000 that was on hand at the time of the filing of the petition for divorce. The court commented, "You can't very well say you divided the property if you give it all to one party." Counsel for defendant suggested the home and the Raymond Oil Company stock be sold and that a substantial portion of these funds be set over to defendant. The judgment of the court was journalized and filed on December 8, 1972.

The plaintiff was awarded as her separate property:

1. 1968 Oldsmobile station wagon.

2. The division of cash made by the parties, of which plaintiff retained about $9,000.

3. The residence in Wichita valued at $60,000.

4. 138,911 shares of stock in Raymond Oil Company, Inc.

5. All other property in the marital estate not awarded to defendant.

The defendant was awarded as his separate property:

1. 1959 Ford Thunderbird.

2. The division of cash made by the parties, of which defendant retained about $2,000.

3. The household furniture at residence in Wichita or $4,000 cash—option in defendant.

4. Personal property formerly owned by defendant's parents.

5. Judgment against plaintiff for $30,000, payable in one year, to be a lien on residence property and corporate stock.

The judgment also declared each party to be liable for fifty percent or $3,010.99 of the amount due and owing the Raymond Oil Company, Inc. The plaintiff's share of the marital estate, which had a fixed value, totaled $202,000, against defendant's share of $36,000. The trial court did not award alimony, but continued a previous award for child support of $50.00 per week.

The plaintiff claims the trial court erred in making a division of property without hearing evidence. It appears the parties had been before the trial court on three prior occasions and this, together with facts disclosed by the detailed opening statements introduced by opposing counsel, stimulated an effort to expedite the trial. We cannot, however, give approval to any ruling of the trial court which prohibits the parties from introducing relevant admissible testimony. It is apparent from the record that the plaintiff appeared at the hearing prepared to present evidence. After the statement of the trial court implying no evidence was

necessary, counsel for plaintiff did not make known his objections to the court's statement. In fact, he acquiesced therein by stating the only evidence he wished to introduce was a series of exhibits to prove plaintiff's funds were the origin of the property in the marital estate. Twelve exhibits introduced were admitted in evidence. K. S. A. 60-405 provides no judgment should be set aside by reason of the erroneous exclusion of evidence unless the proponent of the evidence makes known its substance (see also K. S. A. 1973 Supp. 60-243 [c]). Here, no effort was made by plaintiff to make known the substance of the evidence she expected to present, and the statement of her counsel revealed there was no additional evidence she desired to present.

The situation also provided a basis for the court's statement that he needed to know only the nature of the marital estate and what the parties thought each was entitled to. In itself, this statement of the law, if given a literal interpretation, was erroneous. Many factors may be considered in reaching a decision which satisfies the statutory requirement of "just and reasonable." (*Zeller v. Zeller,* 195 Kan. 452, 407 P. 2d 478; *Saint v. Saint,* 196 Kan. 330, 411 P. 2d 683; *Folk v. Folk,* 203 Kan. 576, 455 P. 2d 487.) The fact the trial court made a statement as to the law which might be considered erroneous does not affect the validity of a judgment which otherwise satisfies the statutory directive.

K. S. A. 1973 Supp. 60-1610 (*b*) provides:

"(*b*) *Division of property.* The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in his or her own right after marriage, or acquired by their joint efforts, in a just and reasonable manner, either by a division of the property in kind, or by setting the same or a part thereof over to one of the spouses and requiring either to pay such sum as may be just and proper, or by ordering a sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale."

The plaintiff also claims the trial court erred in granting an excessive amount of property to defendant and in failing to grant alimony to plaintiff. The plaintiff's argument is based on the fact the whole of the marital estate resulted from her funds. Under these circumstances, she claims the whole of the marital estate should have been awarded to her. The trial court pointed out that under K. S. A. 1973 Supp. 60-1610 (*b*) the source of the property was immaterial and the statutory directive to divide would not be followed by awarding all the property to one party.

G. S. 1949, 60-1511, the predecessor of K. S. A. 1973 Supp. 60-1610 (*b*), provided that in a divorce proceeding the wife was entitled to all her separate property and such share of the husband's property as the court might deem just and proper. We considered the change in the law in *Zeller v. Zeller*, supra. We said:

"The significant change in the law regarding division of property is that the court is no longer required to set aside to the wife the separate property which she brought to the marriage or acquired with her own funds after the marriage. The court now is given authority to divide all of the property owned by the parties, regardless of the source or manner in which acquired, in a just and reasonable manner." (p. 459.)

We stated in *Harrah v. Harrah*, 196 Kan. 142, 409 P. 2d 1007:

". . . Although the source of the property no longer affects the trial court's decision as a matter of law, it is still one of the practical considerations along with the contributions of each spouse and the length of the marriage." (p. 147.)

The controlling test, however, is the exercise of discretion in a "just and reasonable manner." We have stated on many occasions that a division of property will not be disturbed unless it is clearly shown there was an abuse of discretion. (*Preston v. Preston*, 193 Kan. 379, 394 P. 2d 43; *Dikeman v. Dikeman*, 191 Kan. 68, 379 P. 2d 314.)

Judicial discretion was defined in *Stayton v. Stayton*, 211 Kan. 560, 506 P. 2d 1172, as follows:

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." (p. 562.)

The division of property in this case discloses property of a value of $202,000 was awarded to the plaintiff as against a judgment and property valued at $36,000 to the defendant. Such a division might be considered inequitable to the defendant in the absence of a showing of the source of the property. We cannot indulge in speculation as to the trial court's thinking, but it would appear consideration was given, at least in some degree, to the source of the property.

The order of the trial court as to child support consumes most of defendant's earnings other than limited living expenses. Under

these circumstances, we cannot fault the trial court for failure to award alimony.

The plaintiff also contends the trial court erred in refusing to make its order of December 8, 1972, modifying child support from $50.00 per week to $75.00 per week retroactive to May 11, 1972. The order of modification resulted from a motion filed on November 9, 1972. The plaintiff argues evidence produced at the December 8 hearing showed that the full extent of defendant's earnings at the time of the May 11 hearing was not disclosed, and since the judgment of May 11 had not been journalized the increase to $75.00 per week should date from May 11.

The general rule, as often set out by this court, is that child support may be modified at any time circumstances render such a change proper, but the modification operates prospectively only. (*Ediger v. Ediger*, 206 Kan. 447, 479 P. 2d 823; *Brieger v. Brieger*, 197 Kan. 756, 421 P. 2d 1.) We find no reason to depart from this rule in the present case. The record shows the order of $50.00 per week child support pre-dated the trial of the action on May 11 and was not dependent upon the journal entry of final judgment for effect. The journal entry merely recited: "The present order of support will be continued until the Court has evidence upon which to base a new order. . . ."

The effectiveness of the original order was continued with or without the filing of the journal entry. Any alteration of the amount of that original order pre-dating the order of modification of December 8, 1972, would constitute a retroactive judgment which is prohibited.

The trial court is vested with wide discretion in adjusting the financial matters of the parties to a divorce action; and unless we can say no reasonable man could have reached the same results as the trial court, there is no abuse of discretion. Under the facts and circumstances disclosed in the record, the judgment of the trial court is well within the confines of judicial discretion. We cannot approve the statements and actions of the trial court in the particulars set forth in this opinion, but we conclude the judgment of the trial court should be affirmed.

Affirmed.

Schroeder, J., dissents.