No. 49,256

C. E. Brady, *Appellant* and *Cross-Appellee,* v. P. L. Brady, *Appellee* and *Cross-Appellant.*

(592 P.2d 865)

Opinion filed March 31, 1979.

*Charles L. Davis, Jr.,* of Topeka, argued the cause, and *Michael J. Unrein* and *J. Franklin Hummer,* also of Topeka, were with him on the brief for the appellant and cross-appellee.

*F. G. Manzanares,* of Topeka, argued the cause and was on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

Schroeder, C.J.: This is a post-judgment proceeding in a di-

vorce action. On April 23, 1976, the plaintiff-appellant, C. E. Brady, filed an accusation in contempt against her former husband for failure to pay child support. Appeal has been duly perfected from an order of the district court which denied the contempt citation; relieved the defendant-appellee, P. L. Brady, from paying in full child support payments alleged to be due; and modified the order of support.

The parties were divorced on June 6, 1972. The appellant was awarded the care, custody, and control of the couple's three minor children—Michael, age 16; Karen, age 15; and Lori, age 9. The decree provided:

"That the defendant should pay to the plaintiff for the support, maintenance and education of said minor children the sum of Two Hundred Fifty Dollars ($250.00) per month, the same to be due and payable One Hundred Twenty-Five Dollars ($125.00) on the first, and One Hundred Twenty-Five Dollars ($125.00) on the 15th of each month, commencing June 1, 1972, *and to continue thereafter until further order of the Court.*" (Emphasis added.)

Subsequently Mike, the oldest child, moved to his father's house in June of 1973 and resided with him until he became of age. Soon after the move the appellee reduced child support payments from $250 to $167 per month, *admittedly with the consent of the appellant.* The appellant was having problems with Mike and she felt the father could do a better job in caring for Mike.

Mike, the oldest child, reached the age of majority (18) in February 1974. Karen reached the age of majority (18) on May 2, 1975. At that time, May 1975, the appellee commenced paying $85 per month to the appellant for child support through the clerk of the district court.

By the terms of the divorce decree the homestead of the parties was to be sold in a commercial manner after June 1, 1975, and the net proceeds of the sale were to be divided equally. When a dispute arose concerning the sale of the house the appellant was served with a citation in contempt and consulted an attorney regarding the sale. Upon resolution of the matter concerning the sale the order for sale of the house was dated August 4, 1975. The closing statement shows the appellant wife received the sum of $21,764.33 and the appellee husband the sum of $19,310.52. At no time during this dispute did the appellant assert that the appellee was behind in his child support payments. In fact, on March 27, 1975, *the appellant prepared and executed an affidavit*

stating the appellee was current and up to date on his child support payments. On this point the appellant testified in the instant contempt proceeding: "At the time then I knew that he was current."

By the appellant's own testimony she had conversations with the appellee from June 1972 to February 1976. At the time she prepared and signed the affidavit the appellee was not paying child support through the clerk of the district court and there were no records in the clerk's office showing how much had been paid. She testified, "Whatever agreement was entered into between Mr. Brady and I prior to and at the time the divorce decree was granted has never been changed."

The first time the appellee became aware that the appellant was asking him for child support, in addition to what he had been paying, was when he received a letter dated March 16, 1976, from her attorney. This is the first time he knew she was claiming that he was delinquent in his support payments.

When this divorce action was filed in 1972 the proceeding was termed a *friendly* divorce. The appellee had no attorney and testified that the parties had an agreement he would pay $75 per child each month for their support. This is corroborated by an exhibit introduced in evidence showing payment by a cancelled check in the amount of $225 to the appellant for child support prior to any order of the trial court indicating the amount of child support payable.

The appellant denies that there was an agreement to pay $75 per month per child as support payments. This is the only factual dispute between the parties in the entire record. Both parties testified extensively.

This dispute was triggered by the fact that the appellant wanted the appellee to pay the college expenses of Karen after she had reached the age of majority. The appellee testified that in his opinion the two oldest children were "not college material." He refused to pay for Karen's college education and said there was no agreement between Mrs. Brady and himself to pay for the college education of the children. There is no testimony by the appellant in the record to the contrary.

On April 23, 1976, the appellant filed a contempt proceeding. She alleged the appellee was approximately $3,556.15 in arrears in child support payments. At that time, as well as the date of

hearing on July 21, 1976, no motion to modify the original order of $250 per month had ever been filed by either party.

The appellee then filed a motion on May 19, 1976, for an order interpreting the child support provision in the decree or, in the alternative, for an order *nunc pro tunc.*

At the hearing on July 21, 1976, the district court found the original order was in full force and effect. The court then ruled it had authority to relieve the appellee from final judgment under K.S.A. 60-260(*b*)(6). The trial court gave the father credit against the judgment for the period of time Michael was in the father's custody commencing in June 1973, and it also gave the father credit against the judgment for the period of time after Karen attained the age of 18 years. The trial court modified the order of child support directing the appellee to pay the appellant $130 per month for the support of Lori, the youngest child, admonishing that it was not a final order, and stating: "That Order is subject to proof."

The trial court dismissed the motion for contempt based upon its findings in the case.

It is apparent the trial court in hearing this matter treated the motion not only as one for contempt but also as a motion to modify the child support award by reason of changed circumstances.

On appeal the appellant relies on the technicalities of Kansas law regarding child support awards in an effort to collect the difference between $250 per month, calculated from the date of the divorce decree, and what was actually paid in money to the appellant as of May 31, 1976.

We have often stated installments for support of a minor child become final judgments as of the dates due. They may be enforced as other judgments and are barred by the statute of limitations as other judgments. See *Strecker v. Wilkinson,* 220 Kan. 292, 297, 552 P.2d 979 (1976) and cases cited therein. Furthermore, child support may be modified at any time circumstances render such a change proper, but the modification operates prospectively only. *Salem v. Salem,* 214 Kan. 828, Syl. ¶ 4, 522 P.2d 336 (1974); *Ediger v. Ediger,* 206 Kan. 447, 479 P.2d 823 (1971); *Herzmark v. Herzmark,* 199 Kan. 48, 427 P.2d 465 (1967). Divorced parents cannot legally reduce child support or terminate the obligation by a contractual agreement or otherwise. It is a right of the child and

can only be reduced or terminated by court order. See *Thompson v. Thompson*, 205 Kan. 630, 470 P.2d 787 (1970).

The appellant first contends the trial court abused the exercise of its power of discretion when it retroactively relieved the appellee from judgments which accrued when he failed to pay child support previously ordered by the court.

Material to further discussion herein are provisions in K.S.A. 60-260(*b*) which provide in part:

"On motion and upon such terms as are just, the court may relieve a party or said party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged . . . , or (6) any other reason justifying relief from the operation of the judgment."

The trial court relied on the broad grant of discretionary authority to equitably grant relief from the prior judgment for payment of child support under K.S.A. 60-260(*b*)(6).

Our court had occasion to thoroughly discuss K.S.A. 60-260(*b*)(6) in *Neagle v. Brooks*, 203 Kan. 323, 454 P.2d 544 (1969). The discussion in that case indicates (1) a motion under 60-260(*b*)(6) is addressed to the sound discretion of the trial court; (2) the statutory provision is not intended as an alternative to appeal nor as a means of circumventing time limits on appeal; (3) the power to vacate judgments under 60-260(*b*)(6) was not intended to provide relief to a party from free, calculated and deliberate choices he has made; and (4) the moving party remains under a duty to take steps to protect his interest.

Generally a proper motion, notice to the adverse party and an opportunity to be heard are prerequisites to a modification of a child support order under K.S.A. 1978 Supp. 60-1610(*a*). See *Strecker v. Wilkinson*, 220 Kan. 292, Syl. ¶ 3. Here the appellee could have filed a motion to reduce child support at any time.

Previous case law in this area is of little avail. In *Blair v. Blair*, 210 Kan. 156, 499 P.2d 546 (1972), our court held the lower court was without authority to set aside past due *alimony* installments under K.S.A. 60-260(*b*)(6). We held K.S.A. 1971 Supp. 60-1610(*c*) was a limitation on the general authority under K.S.A. 60-260(*b*)(6). However, K.S.A. 1971 Supp. 60-1610(*c*), now K.S.A. 1978 Supp. 60-1610(*d*), specifically limits the court to modify amounts of awarded alimony that *have not already become due.* No similar limiting provision appears in K.S.A. 1978 Supp. 60-1610(*a*).

In *Meyer v. Meyer,* 209 Kan. 31, 495 P.2d 942 (1972), approximately nine and one-half years went by before the appellant filed a motion to modify and set aside a portion of the divorce decree ordering payment of child support. The motion was filed under K.S.A. 60-260(*b*)(6). The trial court denied it and this court affirmed. The appeal in *Meyer* dealt with a review of an order *denying* the motion for relief and not the decree itself. The question whether the trial court could modify a divorce decree under K.S.A. 60-260(*b*)(6) was not raised. However, in *Besse v. Besse,* 1 Kan. App. 2d 217, 220, 563 P.2d 518 *rev. denied* 223 Kan. clxxi (1977), the Kansas Court of Appeals suggests in dicta that relief from a child support order may be proper under K.S.A. 60-260(*b*)(6). See also *Kinsella v. Kinsella,* 181 N.W.2d 764 (N.D. 1970).

The proper procedure for relief from prospective unpaid child support payments should be sought under K.S.A. 1978 Supp. 60-1610(*a*) by a proper motion of a party rather than K.S.A. 60-260(*b*)(6). Here the trial court had authority under 60-1610(*a*) to grant relief from the prospective application of the judgment for child support payments, and the prospective modification of the child support award was justified.

The testimony at this contempt hearing revealed all the necessary information required to sustain a motion to reduce prospective child support payments.

Generally judgment in contempt proceedings rests within the sound discretion of the trier of facts and will not be disturbed on appellate review absent a clear showing of abuse of discretion. *Strecker v. Wilkinson,* 220 Kan. 292, Syl. ¶ 2. On the facts in this case it cannot be said the trial court erred in denying the motion for contempt.

As we construe the trial court's order in this case, K.S.A. 60-260(*b*)(6) was improperly relied upon to retroactively modify unpaid child support installments which had become judgments. On the facts in this case, however, it is not necessarily fatal.

The appellant contends the divorce decree requires the appellee to pay $250 per month until the youngest child reaches the age of majority. In other words, she argues the award is not divisible and must be construed to provide monthly payments until Lori, her youngest child, reaches the age of 18.

The rule adopted by the majority of jurisdictions is that when, as part of a divorce decree, a parent is ordered to pay a specified amount periodically for the benefit of more than one child, the emancipation of one child does not automatically affect the liability of the parent for the full amount. The proper remedy is to seek modification of the decree which will operate *prospectively* only. See *Becker v. Becker,* 39 Md. App. 630, 387 A.2d 317, 319-20 (1978) and authority cited therein; see also *Jerry v. Jerry,* 235 Ark. 589, 592, 361 S.W.2d 92 (1962); *Rhodes v. Gilpin,* 264 A.2d 497, 499 (D.C. App. 1970); *Lusk v. Lusk,* 537 S.W.2d 874, 878 (Mo. App. 1976); *Beaird v. Beaird,* 380 S.W.2d 730, 732 (Tex. Civ. App. 1964); 24 Am. Jur. 2d, Divorce and Separation § 854, pp. 969-970; Annot., 2 A.L.R.3d 596, 611, § 5.

The leading and sole authority to the contrary in the area of support is *Ditmar v. Ditmar,* 48 Wash. 2d 373, 293 P.2d 759 (1956). There the court construed a lump sum child support payment as severable and modified the provisions in the decree.

We believe the better view is the minority view because when a fixed sum payable periodically is awarded as support for more than one child, and where the trial court does not specify the amount per child, justice is better served by dividing the sum proportionately. We hold this law will govern the rights of the parties before us but in all other cases it will be applied prospectively.

Admittedly child support is a very troublesome area. The father, upon whom the obligation to make support payments traditionally falls, will more often than not view a lump sum award as divisible by the number of children and make reductions in payment proportionately. When a child attains the age of majority, or when a child goes to live with the other parent, or when a child dies, the obligation to pay support *for that child* should automatically cease and terminate unless the agreement provides otherwise.

Under the proportionate share rule of divisibility, needless litigation will be avoided because neither party will be required to seek an immediate court order. If, however, the proportionate share is unfair under the circumstances, either party can apply to the court for a change under K.S.A. 1978 Supp. 60-1610(*a*). In any event, the parent who pays support pursuant to a lump sum award should be allowed to reduce support proportionately as the children become of age without returning to court each time.

Our prior decisions and statutory law also support this position. K.S.A. 1978 Supp. 60-1610(*a*) provides that any order requiring either parent or both parents to pay for the support of any child until the age of majority *shall terminate when such child attains the age of eighteen (18) years,* unless by prior written agreement approved by the court such parent or parents specifically agreed to pay such support beyond the time such child attains the age of eighteen (18). Here the divorce decree ordered child support payments to continue "until further order of the court." Actually, a divorce court has no power to continue a provision for support of a child after the child attains the age of majority. An order for support of a child "until further order of the court" does not mean that payments will accrue after the child becomes of age until the court makes a further order. The order terminates when the child attains majority without further order. *Rice v. Rice,* 213 Kan. 800, 804, 518 P.2d 477 (1974); *Jungjohann v. Jungjohann,* 213 Kan. 329, 516 P.2d 904 (1973); see also *Baker v. Baker,* 217 Kan. 319, 537 P.2d 171 (1975); 24 Am. Jur. 2d, Divorce and Separation § 855, p. 970.

Here the appellee commenced paying $250 per month until his oldest son came to live with him. He then reduced payment by one-third and the appellant never objected. In fact, during this time she voluntarily prepared and executed an affidavit stating the appellant was current. Then when the second child reached her age of majority the appellee again reduced payment by one-third in accordance with his understanding of the agreement.

Under the provisions of K.S.A. 60-2105 the Supreme Court is required in any case pending before it to render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court.

Accordingly, in applying the foregoing statutes, we hold the award is severable proportionately, and the appellee has *satisfied* the judgment of the trial court in the payment of child support decreed by the trial court in its original order up to and including May 31, 1976.

We have approved the prospective order of child support reduction for Lori. On oral argument to this court, the appellee's

counsel disclosed that in the trial court, under a change of custody order entered within a week of this contempt proceeding, Lori had been placed in the father's custody and has been living with him. Therefore, our decision which affirms the trial court's action as modified, in effect, relieves the appellee from further obligation under the divorce decree.

Other points raised in the appellee's cross-appeal need not be discussed in view of the holding in this case.

The judgment of the lower court is affirmed as modified.

HERD, J., not participating.

PRAGER, J., concurs in the result.

FROMME, J., dissenting. There was no final order entered by the trial court in this case and this appeal should be dismissed on jurisdictional grounds. K.S.A. 60-2102(a)(4). The trial court in making its order of July 21, 1976, stated: "However, that is not a final Order." Later in the order it was said: "So there is no misunderstanding, it is a temporary Order subject to be modified when I hear the Motion to set the child support for the one child, Lori." In the majority opinion this court notes that within a week of the contempt proceeding, the trial court placed Lori in the father's custody. However, the parties did not appeal from or furnish this court with the final order entered, and we should not speculate as to its contents.

In addition to the above reason I dissent from ¶ 3 of the syllabus and the corresponding portions of the opinion because what is said will add to the difficulties already present in this area of the law.

After citing the *Strecker, Salem, Ediger, Herzmark, Thompson* and *Blair* cases, which have heretofore prevented divorced parents from terminating or reducing child support payments by agreement without prior district court approval, this court ignores said law.

The court adopts a novel rule based on what is characterized as "[t]he leading and sole authority," the *Ditmar* case from the State of Washington. That case was decided in 1956, some 23 years ago. Apparently no other states have adopted that rule.

The majority rule is contrary to *Ditmar* and is contrary to syllabus ¶ 3. The majority rule was followed as recently as 1978

in *Becker v. Becker*, 39 Md. App. 630, 387 A.2d 317, 319-20 (1978); see also *Jerry v. Jerry*, 235 Ark. 589, 592, 361 S.W.2d 92 (1962); *Rhodes v. Gilpin*, 264 A.2d 497, 499 (D.C. App. 1970); *Lusk v. Lusk*, 537 S.W.2d 874, 878 (Mo. App. 1976); *Beaird v. Beaird*, 380 S.W.2d 730, 732 (Tex. Civ. App. 1964). No satisfactory reason has been given for departing from the majority rule.

I have no disagreement with holding that the parents' obligation for support automatically terminates when a child dies or reaches majority. The statute, K.S.A. 1978 Supp. 60-1610(*a*), so provides.

However, a court is the proper institution to determine the custody, support, and education of minor children of divorced parents. If a court order for custody and support should be changed only the court should do so. Divorced parents cannot be trusted to act in the best interests of the children under all circumstances. The obligation for payment of child support should not automatically and proportionately be reduced when by parental agreement one child goes to live with his father and others remain with the mother. It is argued that under such a rule either parent may later go into court for any necessary change order. True, but why not do this in advance?

If the courts are to continue to protect the interests of the children of divorced parents any change of custody and support of minor children must first be addressed to the courts. The statute, K.S.A. 1978 Supp. 60-1610(*a*), provides that the court shall make provision for the support and education of the minor children, may modify or change any order in connection therewith, and shall always have jurisdiction to make such an order as will advance the welfare of a minor child of divorced parents. Under the present decision of this court the parents by agreement may now by-pass the court, shift the custody of the minor children from one parent to the other, and thereby terminate child support payments previously ordered by a court. This is not wise and I dissent.