No. 62,115

In the Matter of the Marriage of GARY D. PEAK, *Appellant*, and LOIS ELAINE PEAK, *Appellee*.

(772 P.2d 775)

Opinion filed April 14, 1989.

*Orlin L. Wagner*, of Wagner & Howell, of Wichita, argued the cause, and *James R. Howell*, of the same firm, argued the cause and was on the brief for appellant.

*David A. Ricke*, of Davis & Manley, of El Dorado, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

McFARLAND, J.: This case concerns whether or not child support payments are automatically terminated during the period when a minor child spends a summer school recess with his noncustodial parent. The district court held that the obligation terminated during summer recess. The Court of Appeals affirmed the district court in an unpublished opinion filed October 7, 1988, relying on *Brady v. Brady*, 225 Kan. 485, 592 P.2d 865 (1979). The matter is before us on petition for review.

The facts may be summarized as follows. The parties were divorced in 1977. They had two minor children whose custody was awarded to the mother. In 1982, the parties agreed that custody of son Michael should be changed to the father. In 1985, custody of son Christopher was changed to joint custody with the mother having primary custodial care. The order reflecting the change in custodial status fixed child support at $250 per month, to be abated during the summer period when Christopher would live with the father. Christopher remained with the father through the 1986-87 school year. On February 3, 1987, custody was changed officially to the father and the mother was directed to pay $300 per month child support through the court trustee's

office. There were no summer visitation or abatement provisions in the order. Christopher lived with the mother for two and one-half months in the summer of 1987. The mother paid no child support payments for June, July, or August of that year in reliance on the fact that the father had not been required to pay child support payments while Christopher had been with her in the summer under the 1985 order. In November of 1987, the court trustee served a notice on the mother that she ·was three months delinquent in her child support payments. This action resulted therefrom.

The district court held that the obligation to pay child support automatically terminated while Christopher lived with the mother during the summer of 1987 and would likewise terminate under future like circumstances. The father appealed and the Court of Appeals affirmed under authority of *Brady v. Brady*, 225 Kan. 485.

It is apparent that some of the language used in the *Brady* opinion has caused confusion and needs clarification. The facts in *Brady* are summarized as follows. There were three minor children in *Brady* for whose support the father was ordered to pay a lump sum of $250 per month. Subsequently, Mike, the oldest child, moved in with the father on a permanent basis, where he remained until he reached the age of majority in 1974. Sans court order the father reduced his monthly payment by one-third when Mike moved in with him. Karen reached the age of majority in 1975 and the father, again without a court order, reduced his payments by approximately one-half, paying $85 per month for the remaining child, Lori. In 1976, the mother filed a contempt action against the father, challenging the propriety of all prior reductions.

The district court held the father had no obligation to pay for Mike's support after he moved in with the father and no obligation to pay Karen's support after she reached the age of majority. The vehicle used to grant this relief was K.S.A. 60-260(b)(6). The mother appealed, contending the district court lacked jurisdiction to modify past due child support payments and that the lump sum was not divisible.

Our holding in *Brady*, as reflected in the syllabus, is as follows:

"Child support may be modified at any time circumstances render such a change proper, but the modification operates prospectively only." Syl. ¶ 1.

"Accrued, unpaid child support payments cannot be modified under K.S.A. 60-260(b)(6). Similarly, relief from prospective unpaid child support payments should be sought under K.S.A. 1978 Supp. 60-1610(a) by proper motion of the party rather than K.S.A. 60-260(b)(6). (Remarks to the contrary in *Besse v. Besse*, 1 Kan. App. 2d 217, 220, 563 P.2d 518, *rev. denied* 223 Kan. clxxi [1977] are disapproved.)" Syl. ¶ 2.

"When a fixed sum payable periodically is awarded as support for more than one child, and where the trial court does not specify the amount per child, justice is better served by dividing the sum proportionately." Syl. ¶ 3.

"Under K.S.A. 1978 Supp. 60-1610(a) any order requiring either parent or both parents to pay for the support of any child until the age of majority shall terminate when such child attains the age of eighteen (18) years, unless by prior written agreement approved by the court such parent or parents specifically agreed to pay such support beyond the time such child attains the age of eighteen (18)." Syl. ¶ 4.

"An order for support of a child 'until further order of the court' does not mean that payments will accrue after the child becomes of age until the court makes a further order. The order terminates when the child attains majority without further order." Syl. ¶ 5.

"Under the provisions of K.S.A. 60-2105 the Supreme Court is required in any case pending before it to render such final judgment as it deems that justice requires, or direct such judgment to be rendered by the court from which the appeal was taken, without regard to technical errors and irregularities in the proceedings of the trial court." Syl. ¶ 6.

Thus, we adhered to our longstanding rule that child support payments can be modified only prospectively but held that the reaching of majority automatically terminates any obligation for support of that child (unless there is a court approved agreement to the contrary). Syllabus ¶ 5 does not, however, fully reflect the holding of the court on the subject contained therein. In the corresponding portion of the opinion, we stated:

"*When a child attains the age of majority, or when a child goes to live with the other parent, or when a child dies, the obligation to pay support for that child should automatically cease and terminate unless the agreement provides otherwise.*" 225 Kan. at 491. (Emphasis supplied.)

It will be recalled that the trial court's order stated the father's obligation to pay stopped when Karen reached the age of majority and when Mike *went to live with the father*. This language from *Brady* was relied on by the Court of Appeals in affirming the district court. It is this language which needs clarification.

There is no hint in *Brady* that Mike's move to the father's residence was expected or anticipated to be temporary in nature.

It was viewed by both parties as a permanent change of residence. Death of a child or that child's attainment of the age of majority are, obviously, permanent changes of status. In *Brady*, we are speaking of certain events triggering a termination of the child support for that child. "Termination" is defined by Webster's Third New International Dictionary 2359 (14th ed. 1961), in pertinent part, as "end in time or existence: CLOSE, CESSATION, CONCLUSION." When a termination of something occurs, there is no expected resumption thereof. The child support obligation for Karen and Mike thus was terminated by the specified triggering events. We clarify our holding in *Brady* to restrict termination of the child support obligation to situations where a permanent change of residence has occurred.

In contrast, the move by Christopher to the mother's home, in the case before us, was a temporary arrangement for a finite period—a visit. It would be inappropriate to speak of any relief from the obligation to pay child support for the period of the visit as being a termination of the obligation. Rather, the term "abatement" would be more appropriate. Webster's New Collegiate Dictionary 2 (5th ed. 1977) defines "abate," in pertinent part, as "a: to reduce in degree or intensity: . . . b: to reduce in value or amount: make less . . . 3: DEDUCT, OMIT" and "abatement" is defined as "1: the act or process of abating: the state of being abated 2: an amount abated."

The mother herein does not contend that the fact Christopher lived with her for two-and-one-half months by agreement terminated any further obligation on her part to pay child support. Rather, she believes the circumstances warranted an abatement of her obligation for the period of the visit. These circumstances are not encompassed within our holding in *Brady*. Whereas we recognize, as did the trial court, that there are equitable considerations weighing in the mother's favor herein, to affirm the trial court and the Court of Appeals would open up the already difficult problem of child support collection to endless litigation as to whether child support for a particular week or month should be abated. We must further recognize that the temporary absence of a child from the custodial parent has no effect on the amount he or she must pay for utilities, house payments, car payments, etc., all of which necessarily continue during the child's temporary absence. Provision for the prospective abatement of child

support during temporary changes in residence can be made a part of the applicable orders of support and the parties thereto will then know their respective financial obligations and expectations. The rule that accrued unpaid child support payments may not be modified is harsh under some circumstances, but it promotes at least a degree of stability in the difficult area of child custody and support.

We conclude the district court and Court of Appeals erred in holding that the child support obligation terminated during the summer visitation period under the authority of *Brady*.

The trial court's judgment (and the opinion of the Court of Appeals) also allowed prospective abatement of the mother's obligation to pay child support under like circumstances. Although we do not approve of the rationale employed by either court to support this portion of the judgment, it is clear there was, in effect, a modification of the child support order. The trial court heard the relevant evidence and was fully informed on the status of the parties and their respective expenditures on Christopher. The court had jurisdiction to modify the order for future support and it did so. We find no abuse of discretion therein.

The judgments of the district court and Court of Appeals are affirmed in part and reversed in part, and the case is remanded for further proceedings.