(27 P.3d 948)

No. 85,878

In the Matter of the Marriage of TAMALYN J. KASPER, now LUDLOW, *Appellant*, and REX B. KASPER, *Appellee*.

Opinion filed July 20, 2001.

*Megan L. Campbell*, deputy court trustee, for the appellant.

*Dennis J. Molamphy*, of Wichita, for the appellee.

Before BEIER, P.J., PIERRON, J., and BUCHELE, S.J.

*Per Curiam:* This is a post-judgment proceeding in a divorce action between Rex Kasper and Tamalyn J. Ludlow, formerly Kasper. Tamalyn appeals the district court's decision that the emancipation of the parties' son did not automatically terminate her current child support obligation and/or result in a termination of the offset of the current child support obligations under the divided custody arrangement.

The facts are not in dispute. The parties were married in 1977 and had two children: Ty, born October 30, 1980, and McKenzi, born May 28, 1983. The parties were divorced in August 1995. Following the divorce, the parties were granted joint divided custody of both children: Ty resided with Rex and McKenzi resided with Tamalyn. Rex was ordered to pay Tamalyn $95 per month child support commencing September 1, 1995.

Rex filed a motion to modify child support in April 1996. The parties appeared at a hearing on April 16, 1996. However, the order journalizing that hearing was not filed until April 4, 1997, where it appears several changes were made before filing. The parties continued to have joint divided custody and Rex's child support obligation was modified as follows: "April of 1996 -$55.00; May of 1996 -$55.00; June of 1996 -$99.00; July of 1996 -$99.00; August of 1996

-$99.00; September of 1996 -$99.00; October of 1996 -$55.00; November of 1996 and beyond -$12.00."

According to the record, Ty turned 16 years old on October 30, 1996, and the child support obligations of the parties were refigured. Rex's child support obligation was set at $356 per month for McKenzi and Tamalyn's child support obligation was set at $344 per month for Ty. Deducting Tamalyn's lower child support obligation from Rex's higher support obligation resulted in the $12 per month support payment for Rex commencing "November of 1996 and beyond." The child support issues lay relatively quiet for the next several years. During that time period, Ty turned 18 years old on October 30, 1998, but was still attending high school.

On February 7, 2000, Rex filed a motion for modification of child support and determination of certain dental and vision expenses. On February 8, 2000, Tamalyn filed a motion to determine past child support owed by Rex and for an order that the divided custody offset ended on June 30, 1999, the date established by K.S.A. 2000 Supp. 60-1610(a)(1)(B) (until June 30 of the school year during which the child becomes 18 years of age). After a full hearing on the motions, the court entered an order rejecting Tamalyn's argument as follows:

> "Pursuant to the Court's order dated April 16, 1996, filed April 4, 1997, page 3, the Respondent [Rex] was ordered to pay current child support based on a split custody arrangement. The Respondent was ordered to pay $12.00 per month "November of 1996 and beyond". The court finds that this language means that the current child support obligation of the Respondent continued to be $12.00 per month from November 1996 through February 2000 when the Respondent filed his motion to modify the child support obligation. The court finds that the emancipation of the parties' son, Ty Kasper, on June 30, 1999, did not automatically terminate the mother's current child support obligation for her son and/or result in the offset of the current child support obligations under the split custody arrangement to terminate leaving only the father's current child support obligation for the parties' child, McKenzi."

However, the district court granted judgment in Tamalyn's favor in a reduced amount of $474.19 for past due child support and medical judgment. Tamalyn appeals.

Tamalyn argues the district court erred in finding her support obligation for Ty did not terminate on June 30, 1999, and should

have held the only child support obligation remaining after that date was Rex's $356 child support payment for McKenzi. Tamalyn argues Rex had a past-due support obligation of $3,237 as of February 8, 2000.

The issue Tamalyn presents requires interpretation of the child support guidelines and the divorce and maintenance provisions of the code of civil procedure. The interpretation of statutes is a question of law. See *Todd v. Kelly*, 251 Kan. 512, 515, 837 P.2d 381 (1992). An appellate court's review of questions of law is unlimited. *In re Marriage of Sedbrook*, 16 Kan. App. 2d 668, 676, 827 P.2d 1222, *rev. denied* 251 Kan. 938 (1992).

The Kansas Child Support Guidelines (KCSG), as set forth by Supreme Court Administrative Order No. 128 (2000 Kan. Ct. R. Annot. 97), specifically address computation of a support payment in a divided custody situation. A child support worksheet is required for each household. Then, the lower net parental child support obligation is subtracted from the higher amount and the parent with the higher support obligation pays the difference to the parent with the lower obligation. 2000 Kan. Ct. R. Annot. 101, 103. There are no arguments presented in this case that the district court incorrectly computed the two child support obligations in this divided custody arrangement.

The KCSG does not address termination of a child support obligation, but only addresses a court's continuing jurisdiction to modify a child support order based on a material change in circumstances. 2000 Kan. Ct. R. Annot. 113. Termination of a child support obligation is found in K.S.A. 2000 Supp. 60-1610(a)(1), which provides in relevant part:

"Regardless of the type of custodial arrangement ordered by the court, the court may order the child support and education expenses to be paid by either or both parents for any child less than 18 years of age, at which age the support shall terminate unless: (A) The parent or parents agree, by written agreement approved by the court, to pay support beyond the time the child reaches 18 years of age; (B) the child reaches 18 years of age before completing the child's high school education in which case the support shall not terminate automatically, unless otherwise ordered by the court, until June 30 of the school year during which the child became 18 years of age if the child is still attending high school; or (C) the child is still a bona fide high school student after June 30 of the school

year during which the child became 18 years of age, in which case the court, on motion, may order support to continue through the school year during which the child becomes 19 years of age so long as the child is a bona fide high school student and the parents jointly participated or knowingly acquiesced in the decision which delayed the child's completion of high school."

The law is clear in statutory and caselaw authority that child support for Kansas children stops on the date a child reaches the age of 18 or, if the child turns 18 before completing high school, on June 30 after the child graduates from high school. This support obligation automatically terminates and does not require a court order to relieve the obligation. The court in *Brady v. Brady*, 225 Kan. 485, Syl. ¶ 4, 592 P.2d 865 (1979), stated:

"Under K.S.A. 1978 Supp. 60-1610(a) any order requiring either parent or both parents to pay for the support of any child until the age of majority shall terminate when such child attains the age of eighteen (18) years, unless by prior written agreement approved by the court such parents or parents specifically agreed to pay such support beyond the time such child attains the age of eighteen (18)."

In discussing whether marriage of a minor child was a circumstance allowing for unilateral termination of child support, the court in *In re Marriage of Schoby*, 269 Kan. 114, 116, 4 P.3d 604 (2000), recently stated: "Kansas has no statute which specifically terminates the duty to pay child support upon the marriage of a minor. The only automatic terminating events in Kansas are the child reaching the age of majority, the death of the child, or the death of the payor parent." The automatic termination rule also applies to permanent changes of residence by a child. In *Brady*, the court held that when a child attains the age of majority, or when a child goes to live with the other parent, or when a child dies, the support obligation automatically terminates. 225 Kan. at 491. *Brady* was clarified in *In re Marriage of Peak*, 244 Kan. 662, 664-65, 772 P.2d 775 (1989); *Brady* applies only to permanent changes of the child's residence.

We understand Rex's concern that allowing automatic termination of child support in some situations might unnecessarily complicate a divided custody situation where one of the parents has custody of two or more children and one of those children is eman-

cipated at age 18 or, if he or she turns 18 while still in high school, on June 30 after he or she graduates. In that situation, the amount of support for the child or children remaining in the house will change based on the required use of different child support schedules where there is more than one child in the home. However, we are not faced with such a situation today. The parties' knew their respective child support obligations during the offset period. The April 4, 1997, order required Rex to pay $356 per month to Tamalyn for the support of McKenzi and required Tamalyn to pay $344 per month to Rex for the support of Ty. See *In re Marriage of Cranston,* 23 Kan. App. 2d 350, 929 P.2d 820 (1997) (The KCSG requires a district court to compute child support using two child support worksheets in a divided custody situation.) The only fact that changed after Ty's emancipation was that Tamalyn's obligation to support Ty terminated and there was no amount of child support to offset. Rex's child support obligation of McKenzi did not change.

Neither the legislature nor the courts have made a specific exception to the automatic termination rule in K.S.A. 2000 Supp. 60-1610(a)(1) where the parties are involved in a divided custody arrangement. In fact, the legislature has indicated the rule applies in all custody situations. K.S.A. 2000 Supp. 60-1610(a)(1) provides the rule is appropriate, "[r]egardless of the type of custodial arrangement." We will apply the rule in the case at bar and find that the child support obligation for Ty terminated on June 30, 1999.

Additionally, we find the district court erred in finding the parties had a written agreement extending any support obligation beyond the time Ty turned 18 or June 30 after his high school graduation year. The language in the April 4, 1997, order indicating Rex's $12 support obligation commenced "November 1996 and beyond" is not a written agreement to extend the obligation past Ty's emancipation until one of the parties files a motion to modify. This vague language cannot be used to override the law of automatic termination of child support payments when a child reaches the age of majority or other conditions set forth in K.S.A. 2000 Supp. 60-1610(a)(1).

The language in the present case is similar to that found in *Brady*. There, the district court's order included language that

child support would "continue thereafter until further order of the court." The *Brady* court stated a divorce court has no power to continue a provision for support of a child after the child attains the age of majority and the language "until further order of the court" did not mean that payments would accrue after the child becomes of age until the court makes a further order. "The order terminates when the child attains majority without further order. [*Citations omitted*]." 225 Kan. at 492.

We reverse and remand to the district court for an order determining Rex's past-due child support obligation based on Ty's emancipation on June 30, 1999, the elimination of Tamalyn's support obligation for Ty on that date, and Rex's continued $356 support obligation for McKenzi beginning July 1, 1999.

Reversed and remanded with directions.