(595 P.2d 1141)

No. 49,706

VIRGINIA EVELYN TROUGHTON, *Appellee,* v. THOMAS DONALD TROUGHTON, JR., *Appellant.*

Opinion filed June 8, 1979.

*George Earnshaw,* of Ivan and Earnshaw, of Shawnee Mission, for the appellant.

*Eugene C. Riling,* of Riling, Burkhead and Rhudy, of Lawrence, for the appellee.

Before FOTH, C.J., PARKS and SWINEHART, JJ.

FOTH, C.J.: The issue in this case is the effect of *Brady v. Brady,* 225 Kan. 485, 592 P.2d 865 (1979) on the events occurring before that decision was filed on March 31. In that case our Supreme Court held that when a fixed sum payable periodically is awarded as support for more than one child, where the trial court does not specify the amount per child the sum is deemed to be divided proportionately. Hence, as each child reaches the age of majority the parent paying support may make a proportionate reduction in the payment without seeking prior approval from the court. The Court went on to say, "We hold this law will govern the rights of the parties before us but in all other cases it will be applied prospectively." (p. 491.)

In the case at bar the defendant father was ordered in 1974 to pay $250.00 per month for the support of four minor children. In July, 1976, the oldest came of age and defendant reduced his payments by one-fourth, to $187.50. In May, 1977, another child was institutionalized for delinquency, and defendant cut the payment another fourth to $125.00. In June, 1977, the plaintiff mother filed a motion to increase child support; defendant re-

sponded with a motion for a reduction. A temporary order was entered fixing the amount at $150.00 pending a full hearing. After hearing, on October 31, 1977, the trial court fixed the amount at $185.00 per month.

In its October, 1977, order the court also determined that defendant was in arrears in child support, court costs, and attorney fees in the amount of $1,802.19. It is from this part of the order that defendant appeals.

Although defendant quarrels some with the court's mathematics, and particularly with the disallowance of certain payments found not to be child support, his main contention is that he was legally justified in making on his own the 1976-77 deductions from the support ordered, and was not required to seek prior court approval.

Had *Brady* been the law in 1976 and 1977, defendant would be correct. In *Brady,* however, the Court recognized that it was changing the long-standing Kansas rule:

"We have often stated installments for support of a minor child become final judgments as of the dates due. They may be enforced as other judgments and are barred by the statute of limitations as other judgments. See *Strecker v. Wilkinson,* 220 Kan. 292, 297, 552 P.2d 979 (1976) and cases cited therein. Furthermore, child support may be modified at any time circumstances render such a change proper, but the modification operates prospectively only. *Salem v. Salem,* 214 Kan. 828, Syl. ¶ 4, 522 P.2d 336 (1974); *Ediger v. Ediger,* 206 Kan. 447, 479 P.2d 823 (1971); *Herzmark v. Herzmark,* 199 Kan. 48, 427 P.2d 465 (1967). Divorced parents cannot legally reduce child support or terminate the obligation by a contractual agreement or otherwise. It is a right of the child and can only be reduced or terminated by court order. See *Thompson v. Thompson,* 205 Kan. 630, 470 P.2d 787 (1970)." (pp. 488-9.)

It was against this background of prior law that the Court pronounced that its new rule is, in all cases besides *Brady,* to be applied prospectively.

It has long been recognized that an appellate court has the power to give a decision prospective application without offending constitutional principles. *Gt. Northern Ry. v. Sunburst Co.,* 287 U. S. 358, 77 L.Ed. 360, 53 S.Ct. 145 (1932). And see *Carroll v. Kittle,* 203 Kan. 841, 851-2, 457 P.2d 21 (1969); *Vaughn v. Murray,* 214 Kan. 456, 465, 521 P.2d 262 (1974). The options available to a court making a prospective-retroactive choice have been categorized by our court as four:

"(1) Purely prospective application where the law declared will not even apply to

the parties to the overruling case; (See cases collected 10 A.L.R.3d, § 7, p. 1393.) (2) Limited retroactive effect where the law declared will govern the rights of the parties to the overruling case but in all other cases will be applied prospectively; (See *Carroll v. Kittle,* 203 Kan. 841, Syl. ¶ 10, 457 P.2d 21; and cases collectedin 10 A.L.R.3d, § 8 [b], p. 1399.) (3) General retroactive effect governing the rights of the parties to the overruling case and to all pending and future cases unless further litigation is barred by statutes of limitation or jurisdictional rules of appellate procedure; (See cases collected in 10 A.L.R.3d, § 8 [e], pp. 1407-1412.) and (4) Retroactive effect governing the rights of the parties to the overruling case and to other cases pending when the overruling case was decided and all future cases, but limited so the new law will not govern the rights of parties to cases terminated by a judgment or verdict before the overruling decision was announced. (See *Hanes v. State,* 196 Kan. 404, 411 P.2d 643, and cases collected in 10 A.L.R.3d, § 8 [c, d], pp. 1401-1407.)" *Vaughn v. Murray,* 214 Kan. at 465-66.

On its face *Brady* falls in the second category—the language employed is "(2)" almost verbatim.

In *Vaughn v. Murray* the Court also recognized five factors commonly relied on by courts in determining the retroactivity question:

"(1) Justifiable reliance on the earlier law; (2) The nature and purpose of the overruling decision; (3) *Res judicata;* (4) Vested rights, if any, which may have accrued by reason of the earlier law; and (5) The effect retroactive application may have on the administration of justice in the courts." 214 Kan. at 464.

In cases such as this (1) a mother could justifiably rely on the earlier law; a father could have no basis in the prior law to believe he could flout the court's order.(2) The announced purpose of the rule was to avoid litigation by way of repeated applications to reduce support as children reach majority. Here the litigation has already taken place.(3) Prospective application leaves standing judgments for support already accrued, leaving the salutary doctrine of *res judicata* undisturbed. (4) If there are vested rights, they comprise the accrued right to receive payments past due, and not the right to disregard a court order. (5) Retroactive application would require much litigation and judicial time to determine which accrued but unpaid support payments are final judgments and which may yet be modified or set aside. None of these five factors indicates the desirability of applying *Brady* to cases such as this, even though they might be pending when *Brady* was decided.

The *Brady* court's intention is apparent when its language is compared with that in other Kansas decisions which have been given limited retroactive application. For example, in *Carroll v.*

*Kittle,* 203 Kan. 841 (decided July 17, 1969), the Court abolished the rule of governmental immunity as applied to proprietary activities. The Court restricted the retroactive application of this new rule by saying:

"Except for the instant case, the effective date of the abolition of the rule of governmental immunity as applied to proprietary enterprises shall be August 30, 1969. Except for the instant case the new rule shall not apply to torts occurring prior to August 30, 1969." 203 Kan. at 851.

In *Vaughn* the Court considered the retroactive effect which should be given to its decision in *Henry v. Bauder,* 213 Kan. 751, 518 P.2d 362 (January 26, 1974), where the Kansas guest statute was held unconstitutional. The Court adopted the following rule of retroactive effect:

"The law as declared in the overruling decision of *Henry v. Bauder,* supra, (holding Kansas guest statute unconstitutional) shall be given retroactive application to all similar cases pending in the courts of this state on January 26, 1974, and to cases filed thereafter regardless of when the causes of action accrued with the following exception: When a judgment or a verdict has been entered in a district court prior to January 26, 1974, and the same is free of reversible error under the law then existing, the law as declared in *Henry v. Bauder,* supra, shall not apply unless the constitutional question decided in the overruling decision has been timely presented to the trial court." 214 Kan. at 467.

In *Kansas City Millwright Co., Inc. v. Kalb,* 221 Kan. 658, 562 P.2d 65, *modified* 221 Kan. 752 (1977), the Court struck down as unconstitutionally vague K.S.A. 1976 Supp. 79-3603($p$), requiring the collection of a sales tax on services and imposing criminal liability for failure to do so. The retroactive effect of this decision was announced in the original opinion, but was later modified to read:

"Accordingly, the decision here announced will control the rights of *the parties* to this litigation, the rights of all taxpayers having pending actions before the Director of Taxation, the Board of Tax Appeals or in the courts of this state challenging the validity of the tax on the date our decision herein is announced, but in all other cases it shall be applied prospectively. All taxes paid and received by the Department of Revenue pursuant to 79-3603($p$), *supra,* by taxpayers whose available remedies have been exhausted under K.S.A. 79-3610 prior to the date our decision herein is announced shall be retained by the Department of Revenue. All taxes assessed against taxpayers pursuant to 79-3603($p$), *supra,* for which tax warrants have been filed in accordance with K.S.A. 79-3617 (now K.S.A. 1976 Supp. 79-3617) and who do not have pending actions before the Director of Taxation, Board of Tax Appeals or the courts of this state challenging the validity of this tax prior to the date our decision herein is announced may be collected by the Department of Revenue. All other taxes collected pursuant to 79-3603($p$),

*supra,* but not received by the Department of Revenue prior to the date our decision herein is announced, shall be refunded to the consumer." 221 Kan. at 752-3.

Finally, in *State v. Choens,* 224 Kan. 402, 580 P.2d 1298 (1978), the Court considered the retroactive application of its opinion in *State v. Makin,* 223 Kan. 743, 576 P.2d 666 (April 1, 1978). In *Makin* the Court held: (1) where the charge is involuntary manslaughter, the issue is whether the acts of the accused constitute wanton conduct (gross negligence); and (2) vehicular homicide is a lesser included offense of involuntary manslaughter and the jury should be so instructed. The *Makin* decision did not contain any indication of the extent of its retroactive effect. In *Choens* the Court addressed this problem and said:

"The law as declared in the overruling decision of *State v. Makin,* 223 Kan. 743, 576 P.2d 666 (1978), shall be given retroactive application to all similar cases pending in the courts of this state on April 1, 1978, and to all cases filed thereafter regardless of when the causes of action accrued." 224 Kan. at 402, Syl. ¶ 2.

The language in *Brady* is most similar to that in *Carroll v. Kittle.* In both cases the retroactive effect of the new rule is limited to the overruling case itself; in all other cases it was said that the new rule applies prospectively. We therefore hold that *Brady* applies only to fact situations occurring after March 31, 1979, the date the decision was filed.

Since defendant in this case reduced his child support payments prior to March 31, 1979, the *Brady* rule does not apply. He is therefore liable for the deficiency resulting from his unauthorized deductions, as the trial court determined.

Defendant also asks for a remand at which he may present evidence on the question of certain payments for which he was not allowed credit by the trial court. The claim has no merit. Defendant was notified of the hearing and was represented by counsel, who offered no reason for defendant's absence. Defendant's unexplained failure to be present in person presents no ground for reversal. *Cf. State v. Kelly,* 213 Kan. 237, 515 P.2d 1030 (1973); *Desch v. Carnutt,* 186 Kan. 238, 349 P.2d 941 (1960).

Affirmed.