(644 P.2d 1009)

No. 53,073

Frank Patrzykont, *Appellant,* v. Juanita Fay Patrzykont, *Appellee.*

Opinion filed May 12, 1982.

*Dennis E. Mitchell,* of Laurence M. Jarvis, Chartered, of Kansas City, for appellant.

*J. R. Russell,* of J. R. Russell, Chartered, of Kansas City, for appellee.

Before Spencer, P.J., Parks, J., and Ronald D. Innes, District Judge, assigned.

Parks, J.: This is a post-judgment proceeding in a divorce action. Plaintiff Frank Patrzykont filed a motion to terminate child support on November 14, 1980. His former spouse, defendant Juanita Patrzykont, responded with a motion to change custody of the minor children to plaintiff and to determine arrearages in child support. The trial court sustained the motions and found plaintiff in arrears for $400. Plaintiff filed a motion for rehearing and reconsideration in light of *Brady v. Brady,* 225 Kan. 485, 592 P.2d 865 (1979). The request for modification was denied and plaintiff appeals.

On December 22, 1977, plaintiff and defendant were divorced and the defendant was awarded custody of the three minor children (Kevin, James and Tina). The trial court ordered the plaintiff to pay the sum of $75 per week for the support of the three children and further granted defendant-wife a judgment of $1,650 for back child support owed pursuant to an ex parte temporary support order. On July 7, 1978, the trial court modified the child support by ordering plaintiff to pay the sum of $200 per month—$100 on the 6th of each month and $100 on the 21st of each month. On July 28, 1980, Kevin attained legal majority. James discontinued residing with the defendant as of the first

week of September 1980 and since that time has been supporting himself and living with his older brother. From mid-September 1980 until November 20, Tina resided at the Kaw View Detention Home in Kansas City, Kansas, and the Topeka State Hospital as a ward of the state. Since November 21, Tina has resided with her father.

Effective December 12, 1980, the trial court sustained defendant's motion to change custody of the two minor children to the plaintiff and also sustained plaintiff's motion to terminate all child support. Thereafter, the defendant was awarded a judgment against the plaintiff in the sum of $400 in back child support.

In *Brady,* 225 Kan. at 490-92, our Supreme Court held that accrued child support payments cannot be modified under K.S.A. 60-260(*b*)(6) and that prospective unpaid child support payments could only be modified by proper motion pursuant to K.S.A. 1978 Supp. 60-1610(*a*). However, the court went on to hold that under K.S.A. 1978 Supp. 60-1610(*a*) any order requiring either parent or both parents to pay for the support of any child until the age of majority shall terminate when the child attains the age of 18 years, unless by prior written agreement approved by the court such parent or parents specifically agreed to pay such support beyond the time the child attains the age of 18. *Brady,* 225 Kan. 485, Syl. ¶ 4. Moreover, the court validated the automatic reduction in support made by the father when one of the children came to live with him with the consent of the mother. *Brady,* 225 Kan. at 491-92. Then, to facilitate these automatic changes in the support obligation, the court held that when a fixed sum payable periodically is awarded as support for more than one child and when the trial court does not specify the amount per child, justice is better served by dividing the sum proportionately. *Brady,* 225 Kan. at 491. The court summarized its conclusion stating as follows:

"When a child attains the age of majority, or when a child goes to live with the other parent, or when a child dies, the obligation to pay support *for that child* should automatically cease and terminate unless the agreement provides otherwise." *Brady,* 225 Kan. at 491.

Thus, under *Brady* the overall child support obligation may be proportionately reduced by the parties without the order of the court, upon the occurrence of certain events such as death or

majority of one of the children, or the change of actual custody to the other parent.

Here, the trial court calculated the arrearage based on the sum previously ordered for the support of all three children and refused to consider the date of Kevin's eighteenth birthday or the date on which Tina began living with plaintiff as an automatic termination of any portion of that obligation. This was error. However, plaintiff also argues that under the rationale of *Brady,* emancipation of a child or commitment of a child to the custody of the state should operate as automatic termination events for the child support obligation.

Evidence was produced to show that during the first week of September 1980 the middle child, James, moved out of his mother's house and became self-supporting. Plaintiff seeks to rely on the date of this apparent emancipation as the point at which his support obligation for James automatically terminated. In support of this argument plaintiff cites *Ditmar v. Ditmar,* 48 Wash. 2d 373, 293 P.2d 759 (1956), the case relied on by *Brady* in adopting the automatic reduction rule. However, there is a fundamental difference between Kansas law and Washington law which must bear on any further attempt to rely on *Ditmar.* In Washington it has been held that the obligation of support turns on dependency not majority. *Childers v. Childers,* 89 Wash. 2d 592, 597, 575 P.2d 201 (1978). By contrast, in Kansas a divorce court has no power to extend an order for support of a child beyond the majority of the child regardless of the continuation of actual dependency. *Brady,* 225 Kan. at 492.

Moreover, our court has held in the past that the receipt of support from the mother or others does not diminish or suspend the obligation of the father to support his children. *Thompson v. Thompson,* 205 Kan. 630, 633, 470 P.2d 787 (1970). Additionally, in the absence of wording in the decree to the contrary, the obligation of support is not terminated by the marriage and motherhood of the minor child. *Ortiz v. Ortiz,* 180 Kan. 334, 339, 304 P.2d 490 (1956). Thus, emancipation does not necessarily terminate the obligation of support and would be an inappropriate event for justifying automatic termination by the parents without sanction of the court.

Plaintiff also argues that *Brady* should be interpreted to automatically terminate his obligation to support the youngest child,

Tina, when she became a ward of the state and no longer received support from her mother.

In *Troughton v. Troughton,* 3 Kan. App. 2d 395, 595 P.2d 1141 (1979), this court in dicta expressed the view that support would be automatically terminated for a child institutionalized for delinquency. *Troughton,* 3 Kan. App. 2d at 395-96. The only issue in that case was the effect of *Brady* on events occurring before that decision was filed. The court held that *Brady* did not apply to *Troughton* but mentioned that had it applied, the defendant would have been correct in proportionately reducing his child support obligation when one child was institutionalized for delinquency.

While a child committed to the care and custody of the state may no longer in fact depend on parental support, dependency has never been the measure of parental obligation in this state. In addition, K.S.A. 38-838 states as follows:

"38-838. **Statutes for support of children not repealed.** Nothing in this act shall be construed to repeal any act providing for the support by parents of their minor children; nor shall anything in this act be construed to relieve any person of his legal responsibility to support a child; and nothing in said acts shall prevent proceedings under this act in any proper case."

The particulars of Tina's commitment are not spelled out by the parties; however, as used in the juvenile code, the term "ward" means any child committed to or in the custody of the department of social and rehabilitation services. K.S.A. 38-828a. Assuming that Tina was temporarily placed in the custody of SRS, K.S.A. 38-828 in conjunction with K.S.A. 38-827 provides that when expenses for the care and custody of a child are paid out of various county or state funds because the child has been placed in the custody of the state under the authority of certain provisions of the juvenile code, the parents of the child may be required to reimburse the agency supporting the child.

Bearing in mind the right of the county or state to seek reimbursement for any support it provides and the language of K.S.A. 38-838 in preserving the obligation of support, we hold that classification of a minor as a ward of the state is not a sufficient basis for automatically reducing child support. If termination is appropriate, the party obligated to pay support must seek prospective termination by filing a K.S.A. 1981 Supp. 60-1610(*a*) motion.

Therefore, we conclude that neither emancipation of a minor

nor commitment of a child to the custody of juvenile authorities as a ward of the state is an event which may validate an automatic reduction of the parental obligation of support without further court proceedings. However, when as here, the trial court did not consider in its calculation of child support arrearages the fact that a child attains the age of majority or goes to live with the other parent, the support order is contrary to *Brady,* 225 Kan. at 491, and is in error.

The judgment is reversed and the case is remanded to the district court with directions to calculate the arrearages, if any, in accordance with the views expressed herein.