No. 85-317

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

IN RE THE MARRIAGE OF
DAVID D. BORDNER,

Petitioner and Respondent,

and

LANOR MAE BORDNER,

Respondent and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James B. Wheelis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Matovich & Addy; Bard G. Middleton, Billings, Montana

For Respondent:

Datsopoulos, MacDonald & Lind; David B. Cotner,
Missoula, Montana

Submitted on Briefs: Dec. 18, 1985

Decided: March 11, 1986

Filed: MAR 11 1986

_____
                Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Appellant, Lanor Mae Bordner, appeals from the order of the District Court denying her motion to hold appellee, David D. Bordner, in contempt for failing to satisfy accrued judgments for child support.

The record of this case and the findings of fact made by the District Court disclose the following: The parties' marriage was dissolved by decree of dissolution of marriage on July 5, 1979. During the parties' marriage, two minor children were born as issue of the marriage, namely Laura Lynn Bordner, born January 13, 1964, and David Daniel Bordner, Jr., born January 14, 1966.

The dissolution decree and the parties' separation agreement dated June 27, 1979, provided that David would make child support payments to Lanor through the Clerk of Court, Missoula County, Montana, until each child completed high school following his or her eighteenth birthday in the sum of $150.00 per month, per child.

In April, 1980, Laura moved from her mother's home because of friction which had developed within the family. She moved to her father's residence in Washington State. This move was intended to be permanent and was with the consent of Lanor. Laura, however, lived with David for a period of only four months.

Upon returning to Montana, Laura returned for a brief period of time to her mother's house, then moved to a halfway house and eventually to a group home where she resided throughout the remainder of her minor years. The Department of Social and Rehabilitative Services assumed temporary legal

custody of Laura by order of the District Court in June, 1981.

In 1980, and 1981 David fell into arrears on his child support payments due to unemployment. In January 1981, Lanor filed a petition for support under the Uniform Reciprocal Enforcement of Support Act. As a result of that petition, David was ordered by the Superior Court of Washington for Grays Harbor County to pay the sum of $150.00 per month for the support of the minor children and $25.00 per month for his accumulative arrearage until liquidated. After David Daniel's graduation from high school in June, 1984, David's support order was modified to $75.00 per month by the State of Washington. The record indicates that David has fulfilled his support obligations under the Washington support order.

The District Court found that as of March 29, 1985, a total of $1,450.00 of accrued child support obligations was unpaid and owing by David to Lanor. The District Court arrived at this amount by relieving David of his duty to support Laura between April, 1980, and January, 1982. In conclusion of law number one, the court stated:

> Petitioner was relieved of his child support obligations between April, 1980, and January, 1982. From April, 1980, through July, 1980, Laura Lynn Bordner was integrated into Petitioner's family home with Respondent's consent. That during this period Petitioner provided 100% of Laura's support. From August, 1980, through January, 1982, Laura Lynn Bordner was emancipated and therefore pursuant to M.C.A. § 40-4-208 Petitioner's child support obligation was terminated.

The District Court also concluded that David should pay the arrearages at the rate of $75.00 per month.

The parties' separation agreement provided: "Should any action be commenced to enforce, modify or interpret any provision contained herein, the Court, as a cost of suit,

- 3 -

shall award a reasonable attorney's fee to the successful party." The District Court denied Lanor's request for attorney's fees because she did not "prevail at the hearing."

The following issues are raised on appeal:

1. Whether a parent obligated to pay child support may automatically terminate the provisions for the support upon the emancipation of his child.

2. Whether the District Court erred by concluding that Laura was emancipated from August, 1980, through January, 1982.

3. Whether the District Court erred in relieving David of his child support obligation between April, 1980, and January, 1982.

4. Whether the District Court erred by adopting a deferred payment plan for the payment of unpaid and delinquent child support without reference to contempt, and

5. Whether the District Court erred when it denied Lanor her costs and attorney's fees incurred in enforcing judgments for the accrued child support obligation.

We first address David's contention that the provisions for the support of a child are automatically terminated by emancipation of the child under § 40-4-208(5), MCA, and that no further act of the obligated parent is necessary. Section 40-4-208(5), MCA, states:

> Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child . . .

To agree with David's contention would be to give the obligated parent the discretion to unilaterally declare the emancipation of his child and terminate support payments.

At least one other court has addressed this issue. In Patrzykont v. Patryzykont (Kan. 1982), 644 P.2d 1009, 1012, the Court of Appeals of Kansas held that emancipation does not necessarily terminate the obligation of support and would be an inappropriate event for justifying automatic termination by the parents without sanction of the court.

Emancipation signifies the surrender and renunciation of rights and duties in regard to care, custody and earnings of a child. It is true that at the age of majority, emancipation is automatic, and the parents' obligation for support ends without further action by the court, unless there has been some voluntary agreement that support by one or both parents will continue beyond majority. Herrig v. Herrig (1982), 199 Mont. 174, 187, 648 P.2d 758, 765. Clearly, however, whether a child is otherwise in fact emancipated will not be an easy question in all cases and surely not one to be left to the obligated parent. We therefore hold that for purposes of § 40-4-208(5), MCA, the question of whether a child is emancipated is a question of fact to be determined by the court. If emancipation can be established, a parent generally will have no further duty to support the child. Prior to the age of eighteen, however, there is a presumption against the emancipation of a child, and the burden of establishing emancipation is on the party asserting it.

The next issue to be addressed is whether the District Court erred by concluding that Laura was emancipated from August, 1980, through January, 1982. The record discloses that after Laura returned to Montana from David's home in Washington, she lived with her mother briefly, then moved to a half-way house, and eventually to a group home. On June

- 5 -

15, 1981, the District Court adjudicated Laura a youth in need of care and gave temporary legal custody of her to the Missoula County Department of Public Welfare. The record also discloses that during this period, Lanor provided Laura with various necessities, including personal items, shampoo, toothpaste, shoes, clothing, food and a place to stay periodically. She also paid for Laura's hair cuts, took her to job interviews, and provided her with transportation.

Section 20-25-501, MCA, defines an emancipated minor for tuition purposes as:

> [A] person under the age of 18 years who supports himself from his own earnings or is married. A person who received more than 25% of the cost of supporting himself from any person other than an agency of the government shall not be considered an emancipated minor.

There are no facts in the record nor any findings made by the District Court to indicate that Laura was capable of supporting herself through her own earnings or whether she even had any earnings.

This issue, however, raises the further question of whether a minor adjudicated a youth in need of care should ever be declared a fully emancipated minor. In this State, once a child is adjudicated a youth in need of care the court may order the county welfare department to conduct a financial status investigation of the child's parents and may ultimately order the parents' of the youth who is in the state's custody to make payment to the Department of Social and Rehabilitative Services. Section 41-3-1123 and 41-3-1125, MCA. These statutes place a continuing duty of support on the parents while their child is a youth in need of care which runs contrary to the concept of emancipation. Further, § 41-3-408, MCA, states that the court

- 6 -

"may . . . enter an order granting limited emancipation . . . " to a youth in need of care. The statute gives the court no authority to find a youth in need of care a fully emancipated minor. Thus, we hold that the District Court erred in concluding that Laura was emancipated from August, 1980 to January, 1982 based on the record of this case and that a youth in need of care is limited by statute from attaining more than limited emancipation which in the right case may call for prospective modification of a child support obligation but not for termination of the obligation under § 40-4-208(5), MCA.

The third issue raised for our consideration is whether the District Court erred in relieving David of his support obligation for Laura from April, 1980, through January, 1982.

The action of the District Court is contrary to § 40-4-208(1), MCA, which states:

> . . . a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to the motion for modification.

There can be no doubt that the District Court modified the judgment for accrued child support payments, and modified it retroactively.

By relieving David of his support obligation for Laura during the 4 months she resided in David's home in Washington, the District Court abused its discretion and modified the plain meaning of the terms of the parties settlement agreement and the dissolution decree. Gies v. Gies (Mont. 1984), 681 P.2d 1092, 1096, 41 St.Rep. 1028, 1032. Because Laura's move was intended to be permanent and was done with Lanor's consent, a motion for modification may have been proper at that time. But once David's payments became due under the decree of dissolution, the law puts the

burden upon him to make a positive act to modify his support obligation. State of Oregon ex rel. Worden v. Drinkwalter (Mont. 1985), 700 P.2d 150, 153, 42 St.Rep. 599, 602-03. Since David made no motion for modification once his payments had accrued, the decree could no longer be modified to cancel past due and unpaid child support because the decree can be modified prospectively only. Dahl v. Dahl (1978), 176 Mont. 307, 310, 577 P.2d 1230, 1232.

Having already determined that termination of support due to the emancipation of a minor must be done by motion and that Laura was not emancipated from August, 1980, to January, 1982, we now hold that a motion for termination under § 40-4-208(5), MCA, shall be governed by § 40-4-208(1), MCA. In other words, a decree may be modified to terminate support due to the emancipation of a child only as to installments accruing subsequent to the motion.

The next issue raised is whether the District Court erred by adopting a deferred payment plan for the payment of unpaid and delinquent child support without reference to contempt. In Williams v. Budke (1980), 186 Mont. 71, 77-8, 606 P.2d 515, 518-19, a case factually analogous to the instant case, this Court held that when a husband is brought before the District Court on a motion that he be held in contempt for failing to make support payments and the District Court adopts a deferred schedule without finding the husband guilty of contempt, the action of the District Court constitutes an improper modification of a judgment for accrued payments. The rationale for this rule is that:

> The District Court always has jurisdiction in contempt proceedings for the purpose of enforcing a support money decree, to find the defaulting party in contempt, and to stay the execution of punishment for the contempt upon the provisio that

the defaulting party purge himself by making payments in accordance with a schedule established by the District Court. Williams, 186 Mont. at 78, 606 P.2d at 519; State v. District Court (1948), 122 Mont. 61, 72-6, 198 P.2d 761, 767-69.

In the instant case the District Court denied Lanor's motion for contempt and approved payment of arrearages at $75.00 per month. As stated in Williams, this constitutes a modification of a judgment for accrued payments which cannot be done, without finding David in contempt. To hold otherwise would be to take away Lanor's right to levy execution for the accrued payments if property could be found in the possession of David which could be applied to the arrearages.

We further note that the District Court appeared to give approval to the Washington URESA order modifying David's support payment to $75.00 per month. We, however, have stated that the authority of the court originally ordering payment is not affected or its order modified by an order of the court of the responding state fixing another or different sum. Campbell v. Jenne (1977), 172 Mont. 219, 222, 563 P.2d 574, 577.

Finally, based on our discussions above, we hold that Lanor was entitled to her attorney's fees pursuant to the parties separation agreement.

We reverse and remand with instructions to the District Court to determine the amount of child support owed by David without relieving him of his support obligation for Laura between April, 1980, and January, 1982 and to enter a judgment for that amount.

_John L. Sheehy_
Justice

- 9 -

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_____

_____
Justices