COMMONWEALTH of Kentucky,
Appellant,

v.

Most Reverend William A. HUGHES, Bishop of the Roman Catholic Diocese of Covington, et al., Appellees.

No. 93–SC–452–MR.

Supreme Court of Kentucky.

April 21, 1994.

Chris Gorman, Atty. Gen., Frankfort, Steven L. Schiller, Sp. Asst. Atty. Gen., Newport, for appellant.

John C. LaVelle, Kurt A. Philipps, Jr., Thomas W. Bosse, Deters, Benzinger & LaVelle, P.S.C., Covington, William J. Wehr, Clayton Shea, Newport, for appellee.

STEPHENS, Chief Justice.

In an original action, the Bishop of the Roman Catholic Diocese of Covington petitioned the Court of Appeals for a writ of prohibition seeking to prevent the respondent, Judge William J. Wehr, Campbell Circuit Court, from enforcing his order that certain documents from the church archives be submitted to the Campbell County Grand Jury. The Court of Appeals granted the writ. —— S.W.2d ——. The Commonwealth of Kentucky now appeals to this Court seeking a reversal of the Court of Appeals' order. It is the opinion of this Court that there exists no case or controversy upon which the legal relief sought can be granted. Therefore, the action is dismissed as moot.

In November, 1992, the state began to investigate charges of sex crimes alleged to have been committed by Reverend Earl Charles Bierman in the early 1970s in Newport, Kentucky. Ultimately, the Campbell County Grand Jury indicted Bierman on twenty-nine (29) counts of third degree sodomy and related sex offenses. After Bierman pled guilty to all counts, Judge Wehr sentenced him to the maximum time allowed on each count, twenty (20) years, to be served concurrently.

During the investigation, the Grand Jury subpoenaed all Diocesan records relating to Bierman. The Diocese turned over a majority of the documents requested, but withheld others on the grounds that they contained confidential communications between certain parishioners and the church. It was the view of Diocesan officials, who testified before the Grand Jury, that these documents were protected on grounds of free exercise of religion under the First Amendment and on grounds of evidentiary privilege under KRE 505.

The Commonwealth filed a motion to compel on January 7, 1993. After an in camera inspection of the 627 documents withheld, the judge found the majority of documents to be privileged, but granted the motion to compel with respect to sixty pages. He granted both parties leave to seek appeal of the respective adverse rulings. On February 16, 1993, the Diocese petitioned the Court of Appeals for the above-mentioned writ of prohibition. As stated, the Court of Appeals granted the writ by written order on May 28, 1993, after Reverend Bierman had entered a guilty plea to all charges and after Judge Wehr had discharged the Grand Jury. The Court of Appeals found that the sixty pages of church records Judge Wehr ordered subject to discovery were also privileged under KRE 505, or were "irrelevant to the criminal investigation being conducted by the Grand Jury."[1]

This Court has repeatedly reaffirmed the proposition that it has no jurisdiction to decide issues which do not derive from an actual case or controversy. Ky. Const.

1. The portion of the documents which the Court of Appeals found to be "irrelevant" was the index of the file sought.

§ 110, *In Re Constitutionality of House Bill No. 222*, 262 Ky. 437, 90 S.W.2d 692 (1936) ("Power to render advisory opinions conflicts with Kentucky Constitution Section 110 and thus cannot be exercised by the Court"). Recently, in *Philpot v. Patton*, Ky., 837 S.W.2d 491, 493 (1992), we reiterated that "[o]ur courts do not function to give advisory opinions, even on important public issues, unless there is an actual case or controversy."

The classic occurrence which necessitates a court's abrogation of jurisdiction for mootness is a change in circumstance in the underlying controversy which vitiates the vitality of the action. In *Philpot,* the legislative session had ended and we agreed that "the rules of a particular session of that body must necessarily cease to exist at that same moment." *Id.* at 492. Therefore the Senators' challenge to the constitutionality of Senate Rule 48 was, in essence, a challenge to a non-existent rule. As such, it was impossible for this Court to grant actual or practical relief. *Brown v. Baumer,* Ky., 191 S.W.2d 235, 238 (1945).

■ In the present case, we agree with appellees that the formal discharge of the Campbell County Grand Jury which issued the subpoena for the protected documents is a change in circumstance which renders this controversy moot. In its present posture, the matter before us presents facts which make it impossible for this Court to grant the relief sought by the Commonwealth. Were this Court to vacate the Court of Appeals' order, the gain for the Commonwealth would be meaningless. All that would result is an order to disclose granted by a trial court which no longer has jurisdiction, *McMurray v. Commonwealth,* Ky.App., 682 S.W.2d 794 (1985); *Bock v. Graves,* Ky., 804 S.W.2d 6 (1991), to a Grand Jury which has completed its criminal investigation, and has been discharged, and thus, also no longer has jurisdiction. *See Matthews v. Pound,* Ky., 403 S.W.2d 7 (1966). (The Grand Jury loses jurisdiction over a case when it completes its investigation and is discharged by the circuit court.)

■ The lack of a "live" subpoena requesting the subject documents in this case presents jurisdictional problems from a different angle, as well. The Court of Appeals derives its authority from the Kentucky Constitution, Section 111. This section provides only a limited exception to the Court of Appeals' appellate jurisdiction.

Subsection (2) states:

(2) The Court of Appeals shall have appellate jurisdiction only, except that it may be authorized by rules of the Supreme Court to review directly decisions of administrative agencies of the Commonwealth, *and it may issue all writs necessary in aid of its appellate jurisdiction,* or the complete determination of any cause within its appellate jurisdiction. In all other cases, it shall exercise appellate jurisdiction as provided by law.

(Emphasis added). What this means is that there exists no independent significance to an original action in the Court of Appeals apart from its nature as an appeal from a ruling in the underlying case. Thus, the fatal defect in this matter rears its ugly head again: once the Campbell County Grand Jury, for the benefit of whom these documents were sought, was formally discharged by the Campbell Circuit Court, the writ of prohibition granted by the Court of Appeals lost its character as a "writ necessary in aid of [the Court of Appeals'] appellate jurisdiction." In other words, once appellate jurisdiction over an underlying action is lost, appellate jurisdiction over matters collateral to or derivative from the underlying action is forfeited as well. For this reason, also, the case must be dismissed.

■ The final question to be addressed is whether the facts herein, by their nature, constitute grounds for this Court to review this case under the well established exception to the rule against issuing advisory opinions. In *Lexington Herald–Leader Co., Inc. v. Meigs,* Ky., 660 S.W.2d 658 (1983), this Court addressed the merits of a moot controversy because a majority deemed the issue to fit the standard, "capable of repetition, yet evading review." *Id.* at 661. The determination of whether the exception to the mootness doctrine is available in a given case turns on the application of a two-part test:

(1) is the "challenged action too short in duration to be fully litigated prior to its cessation or expiration and (2) [is there] a reasonable expectation that the same complaining party would be subject to the same action again." *In re Commerce Oil Co.*, 847 F.2d 291, 293 (6th Cir.1988).

■ With respect to the first prong, we find that the events which gave rise to the matter presently before the Court cannot be said to be inherently evasive of review. There is no reason to assume that a different grand jury seeking to discover the same material would be formally discharged before resolution of the privilege issue could be obtained. Even if one were to argue that a grand jury empaneled for a one-month time period involves a process "too short in duration" for this question to be fully litigated, there is nothing to prevent impanelment of a special grand jury of indefinite duration, with the ability, therefore, to litigate this discovery matter to whatever extent necessary.

The above observations also resolve the second prong of the analysis. The very fact that makes this controversy moot (i.e., that the Grand Jury which issued the subpoena has been *discharged*) is the fact that precludes a reasonable expectation that the "same complaining party" will again be subject to denial of the discovery materials sought. If this scenario is repeated, it will be because a different grand jury has been impaneled and decides to re-open the presently concluded investigation.

For the above reasons, the action before this Court is moot and must be dismissed.

All concur.