**RODNEY P., Appellant**

v.

**STACY B., Appellee.**

**No. 2003–SC–0882–DG.**

Supreme Court of Kentucky.

Aug. 25, 2005.

---

10.  *Faris,* 103 S.W.3d at 5.

11.  837 S.W.2d 500.

12.  869 S.W.2d 728 (Ky.1994).

Donna M. Dant, Calhoun, KY, Counsel for Appellant.

Joseph R. Flaherty, Flaherty & Flaherty, Owensboro, KY, Counsel for Appellee.

Opinion of the Court by Justice COOPER.

The issue in this case is one of first impression in this jurisdiction: What effect does the commitment of a minor child of divorced parents to the custody of a state agency have on the child support obligation of the noncustodial parent, particularly when the agency is mandated by statute to collect child support from the child's parents? As is usually and unfortunately the case with respect to matters of custody and support of older children, the child in this case reached the age of majority before the issue could reach this Court for review, thus possibly mooting any future effect of our decision. However, because the issue is one of first impression and is "capable of repetition, yet evading

review," we will address its merits. *Lexington Herald–Leader Co., Inc. v. Meigs*, 660 S.W.2d 658, 661 (Ky.1983) (quoting *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976)); *see also Fletcher v. Commonwealth, ex rel. Stumbo*, 163 S.W.3d 852, 859 (Ky.2005); *Woods v. Commonwealth*, 142 S.W.3d 24, 31 (Ky.2004); *Commonwealth v. Hughes*, 873 S.W.2d 828, 830 (Ky.1994). In order to protect the confidentiality of the juvenile court proceedings and identity of the child, we will identify the parties only by their first names and last initials and the children only by their initials.

Rodney P. and Stacy B. were married on June 6, 1985, and are the parents of two children, H. and A. Rodney and Stacy were divorced by a decree entered on June 6, 1988, which awarded Stacy custody of both children and ordered Rodney to pay child support. The present action was initiated by Stacy's motion, *inter alia*, for an increase in child support premised upon Rodney's substantially increased income. At the time the motion was heard, Stacy had remarried and had been voluntarily unemployed for the preceding ten years. Rodney asserted that the motion for an increase should be denied because Stacy no longer had custody of H., then age fifteen, who had been committed to the custody of the Department of Juvenile Justice ("Department") as a public offender.[1] At the hearing before the Domestic Relations Commissioner on March 20, 2001, Stacy admitted that she could not regain custody of H. any sooner than November 2001. In fact, KRS 635.060(3) provides that "[t]he commitment or placement

shall be until the age of eighteen (18), subject to KRS 635.070 and to the power of the court to terminate the order and discharge the child prior thereto...." In other words, the exact duration of the commitment was unknown. Stacy admitted that H. had already been elevated to a higher level of treatment because of H.'s misconduct during commitment. Stacy did not testify to any expenditures that she had made on H.'s behalf during the commitment, and she did not identify any expenses related to H. that could not be avoided during H.'s extended absence.

The Commissioner calculated Rodney's new child support obligation as if H. were still in Stacy's custody and residing in her household. He applied the guidelines figure, KRS 403.212(7), for the support of two children calculated on the basis of Rodney's present gross income, *id.* (2)(b), and Stacy's imputed income, *id.* (2)(d), less the cost of health insurance for the children, *id.* (2)(g)1, on the basis of which he recommended an increase in Rodney's child support obligation for H. and A. from $98.00 per week to $153.68 per week. Using the same formula, Rodney would have been required to pay $104.40 per week for the support of only A., or $74.95 under a "split custody" arrangement if Stacy had custody of A. and he had custody of H. KRS 403.212(6). The trial court overruled Rodney's exceptions to the report and increased his child support obligation in accordance with the Commissioner's recommendation. The Court of Appeals affirmed. We now reverse and hold that if Rodney is required to pay child support to the Department for the

---

1. Stacy asserted at the Domestic Relations Commissioner's hearing that H. had been committed because she was "out of control," a status offense. KRS 630.020(2). However, she also admitted that the juvenile court had adjudicated H. guilty of theft. Status offend-

ers may be committed to the Cabinet for Families and Children, KRS 630.120(5), KRS 600.020(3); public offenders are committed to the custody of the Department of Juvenile Justice, KRS 635.060(3).

support of H., his child support obligation to Stacy for the support of A. should be calculated as if he had custody of H., *i.e.,* split custody; but if he is not required to make payments to a state agency for the support of H., his child support obligation to Stacy should be calculated on the basis of her custody of only A. until and unless the Department or the juvenile court has restored H. to Stacy's custody or Stacy proves that she is substantially contributing to the support of H.

KRS 403.213(1) provides that a motion to modify child support should be granted "only upon a showing of a material change in circumstances that is substantial and continuing." Rodney does not dispute that his increased income, if considered in isolation, would satisfy that requirement. KRS 403.213(2). However, he contends that the change of custody of H. from Stacy to the Department is also a material change of circumstances offsetting the factor of his increased income, *i.e.,* the increased income is offset by Stacy's decreased need for child support. He also notes that he is exposed to a potential double jeopardy if the Department brings an action against him for H.'s support.

KRS 403.211(1) provides that "[a]n action to establish or enforce child support may be initiated by the parent, custodian, *or agency* substantially contributing to the support of the child." (Emphasis added.) KRS 610.170 provides:

> If it appears ... that the parent or other person exercising custodial control or supervision of any child, or the estate of any child ... who has been ... placed in a foster home or boarding home, or in the care of a public or private facility or agency, or the Department of Juvenile Justice or the cabinet,

*is able to contribute to the support of the child, the court shall enter an order requiring the parent or estate to pay a reasonable sum for the support, maintenance, or education of the child.* The order shall direct that the money be paid to the circuit clerk to be disbursed as ordered by the court or be paid to the person, facility, agency, or the Department of Juvenile Justice or cabinet to which the child was committed or probated....

(Emphasis added.)

Thus, if a child being supported by the state has a parent who is able to contribute to that support, *i.e.,* Rodney, since Stacy is unemployed, the agency providing the support may initiate an action for support and "the court shall" order it. The logic is obvious. Parents have a legal obligation to support their own children until emancipation, completion of high school, or completion of the high school year during which the child reaches the age of nineteen, whichever occurs last. KRS 403.213(3). Obviously, Rodney should not be required to pay support for the same child to both Stacy and the Department. If he were required to pay support to the Department, that consequence would be conceptually the same as *if H. were in his custody.* In that event, the trial court should calculate his child support obligation to Stacy pursuant to KRS 403.212(6) (split custody).[2]

Nor should one noncustodial parent be required to pay child support to another noncustodial parent, absent some evidence that the other noncustodial parent is meeting some obligation to support the child. *Cf. Goff v. Goff,* 323 S.W.2d 209, 210 (Ky. 1959) (holding that order changing custody

**2.** Rodney has not filed a motion to reduce child support, so the effect would be to deny Stacy's motion for increased child support.

terminates obligation to pay child support); *Adkins v. Adkins,* 574 S.W.2d 898, 899–900 (Ky.App.1978) (holding that awarding husband custody for three months each summer was sufficient change of condition to warrant reduction in child support). *Adkins* has been properly criticized for remanding the case for a reduction without a hearing.

> The primary custodian continues to have certain fixed expenses that cannot be avoided during the other parent's summer custody period. For example, a primary custodian cannot be expected to move from a three-bedroom home to a one-bedroom home during the summer months. If the prior child support award shifted income to permit the custodial parent's occupation of such a home, a flat twenty-five per cent reduction undermines the intent of the original award. An evidentiary hearing would have permitted the custodial parent to establish those expenses that were fixed and could not be avoided. Adkins contains a warning for custodial parents faced with motions for substantial custody changes. To prevent the change in custody from affecting support rights, the custodial parent may need to raise the support issue at the trial court level.

Louise E. Graham & James E. Keller, 16 *Ky. Prac. Domestic Relations Law* § 24.32 (2003). Here, Stacy did not testify to any expenditures on H.'s behalf or any fixed expenses that could not be avoided during H.'s absence. Had she done so, the trial court could have considered those facts in computing the amount of child support under KRS 403.211(3)(g) ("[a]ny similar factor of an extraordinary nature specifically identified by the court which would make application of the guidelines inappropriate").

The Court of Appeals' reliance on *Garver v. Garver,* 981 P.2d 471 (Wyo.1999), is misplaced. The obligor father in *Garver* moved for termination of his child support obligation, arguing that his juvenile son's conviction "as an adult" of a felony and resulting incarceration "emancipated" the son and relieved the father of any further obligation for child support. Agreeing that the transfer of the son's custody to an adult detention facility amounted to a change in circumstances warranting modification of child support, *id.* at 472, the Supreme Court of Wyoming nevertheless held that the conviction and incarceration did not effect an emancipation. *Id.* at 474. Apparently, no claim was made that the noncustodial parent should be relieved of his child support obligation because the former custodial parent no longer had custody of the child. Interestingly, the trial court had ordered that the support payments be "redirected to the applicable detention facility which has the responsibility to care for [the son] during such incarceration." The appellate court held that the trial court was without jurisdiction to enter that order. *Id.* at 473. Other than *Garver,* there are few cases that even come close to addressing this issue. We examine them primarily for purpose of comparison to the facts of this case.

In *Van Winkle v. Van Winkle,* 107 Ill. App.3d 73, 62 Ill.Dec. 831, 437 N.E.2d 358 (1982), the obligor father filed a motion to terminate his child support obligation because his minor son had been adjudicated delinquent and his custody had been transferred to the Illinois Department of Corrections. The Department of Corrections did not charge parents for the support of juveniles placed in its custody. *Id.* at 360. The trial court denied any relief. The Appellate Court of Illinois held that the transfer of custody was a substantial change of circumstances warranting modification, though not necessarily termi-

nation, of child support. *Id.* Unable to determine whether the trial court had considered at least a reduction of the father's child support obligation, it remanded the case for such a determination. *Id.* at 361.

In *Marriage of Bordner*, 220 Mont. 339, 715 P.2d 436 (1986), the child had, with the custodial parent's (mother's) consent, lived for awhile with her father and then for eighteen months in a half-way house and a group home until her eighteenth birthday. Approximately seven months before her eighteenth birthday, temporary legal custody of the child was transferred to the Department of Public Welfare. The father never made a motion to modify his child support obligation. Instead, in response to the mother's motion for arrearages, he raised the child's "emancipation" as a defense. The Supreme Court of Montana held (1) that the child was not emancipated because the mother continued to provide her with necessities, a periodic place to stay, and transportation, *id.* at 438–39; and (2) that accrued child support obligations cannot be retroactively modified. *Id.* at 439.

> Because Laura's move was intended to be permanent and was done with Lanor's consent, a motion for modification may have been proper at that time. But once David's payments became due under the decree of dissolution, the law puts the burden upon him to make a positive act to modify his support obligation.

*Id.*

In *Conley v. Conley*, 234 A.D.2d 910, 651 N.Y.S.2d 802 (N.Y.App.Div.1996), the child was adjudicated delinquent and placed with the Division for Youth in a nonsecure residential facility for a period of eighteen months. However:

> Although petitioner has temporarily lost custody of the child, she has not abdicated her parental role or responsibilities.

Petitioner presented evidence that the goal of the placement with the Division for Youth is to reunite the child with his family and to integrate him back into society. Visitation between the child and his family is encouraged and, at the time of the hearing, the child was spending some weekends at home with petitioner. She is responsible for his transportation to and from the facility for visits and for all of his expenses during the visits. She also makes additional trips to the facility to visit the child and take him out to lunch or shopping. She provides him with spending money and various personal items, including a winter jacket. Petitioner continues to bear costs associated with the care of the child despite her temporary loss of custody and respondent should contribute to those costs.

*Id.* at 803. Under those circumstances, the court also held that the obligor father could not avoid his responsibility to pay child support based on the "mere possibility" that the Division of Youth might seek reimbursement for costs incurred as a result of the child's placement. *Id.*

■ In the case *sub judice*, Stacy presented no evidence to show that she continued to exercise custodial-like responsibilities after H.'s custody was transferred to the Department, or that she expended any monies or incurred any monetary obligations on behalf of H., or that she continued to incur expenses related to H. that could not be avoided during H.'s extended absence. Thus, she identified no "factor of an extraordinary nature ... which would make application of the guidelines inappropriate." KRS 403.211(3)(g).

■ On the basis of the evidence presented in this case, we hold that the trial court erred in increasing Rodney's child support obligation to a sum in excess of

$104.40 (the guidelines figure for the support of one child). If the Department of Juvenile Justice has since obtained child support from Rodney pursuant to KRS 610.170, his child support obligation to Stacy should have been recalculated in accordance with KRS 403.212(6). Accordingly, we reverse the Court of Appeals and remand this case to the Daviess Circuit Court to receive any additional evidence and take any further legally authorized action deemed appropriate and in accordance with the content of this opinion.

All concur.