RENDERED: APRIL 22, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0636-MR

BRYAN ADAMS                                                              APPELLANT

APPEAL FROM FRANKLIN CIRCUIT COURT
v.       HONORABLE PHILLIP J. SHEPHERD, JUDGE
ACTION NO. 21-CI-00133

KENTUCKY PAROLE BOARD                                         APPELLEE

OPINION
AND ORDER
DISMISSING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; COMBS AND GOODWINE, JUDGES.

COMBS, JUDGE: Bryan Adams appeals the order of the Franklin Circuit Court

dismissing as moot his declaratory judgment action against the Kentucky Parole

Board ("the parole board"). However, as Adams has now completed his sentence

of imprisonment, any decision that we might render would be merely advisory and,

therefore, prohibited. Consequently, we dismiss the appeal as moot.

In August 2019, Adams was released from incarceration on parole. However, when he failed to report to the Burns M. Brady Center in Louisville, he was sanctioned with a 20-day term in jail. Released again in November 2019, Adams failed to report as ordered to WestCare in Pikeville. As a result, the parole board issued a parole violation warrant. Adams was arrested and charged with absconding and failure to cooperate with a parole officer. He was served with notice of a preliminary revocation hearing ("probable cause hearing").

The notice outlined the multiple steps of the revocation process and explained to Adams that he would have an opportunity to present witnesses and documents and -- in the parole board's discretion -- to question witnesses who testified against him. Adams was specifically advised that he had a right to request a lawyer to represent him at a final revocation hearing that would be conducted only if probable cause were established at the preliminary revocation hearing.

He was advised that if he could not afford a lawyer, the Department of Public Advocacy would determine whether one would be appointed for him. He was warned that if he failed to request a lawyer, he might nonetheless be required to proceed without one. He was advised that he could request a continuance of the proceedings if necessary. Finally, Adams was instructed that he could waive his right to the probable cause hearing and have his case proceed directly to a final revocation hearing. If he decided to forego the probable cause hearing, Adams was

directed to notify his parole officer immediately. Adams indicated that he understood these rights and responsibilities. He also indicated that while he understood that he could have an attorney present at the probable cause hearing, he elected to proceed without counsel. Adams said that his decision to do so was made of his own accord.

Ultimately, Adams waived the probable cause hearing in its entirety. He said that he understood all of the opportunities that he was giving up: to have a hearing where he had a right to request counsel; to call witnesses; to question witnesses testifying against him (in the discretion of the parole board); and to present documents. He acknowledged that there was probable cause to believe that he had violated the conditions of his parole. Adams indicated that he understood that following a final revocation hearing, his parole could be revoked and he could be required to serve the remainder of his sentence. He said that he signed the waiver "freely and voluntarily and with full knowledge of the consequences"; that he had not been promised anything in exchange for a waiver of the probable cause hearing; and that he was not under the influence of drugs or alcohol.

Next, Adams was advised that he would be given an opportunity to be heard at an evidentiary hearing to show that he did not violate the conditions of his parole. He was advised that he could: present witnesses; offer evidence in mitigation showing that the violation did not warrant revocation; and potentially

question witnesses who testified against him. He was also advised that he had a right to request a lawyer to represent him and that the Department of Public Advocacy would determine whether it would appoint counsel for him if he could not afford a lawyer. He was told that he could request a continuance of the final revocation hearing. Finally, Adams was advised that he could waive the final revocation hearing. He was specifically encouraged to consult with a lawyer before giving up his right to the evidentiary hearing. If he decided to waive the final revocation hearing, he was to notify his parole officer immediately. Adams indicated that he was aware of the violations that he was alleged to have committed and that he understood his rights and responsibilities as had been explained in detail.

Adams waived his right to request counsel for the final revocation hearing and indicated that he did so of his own free will. He understood that he was giving up his right to a full hearing (with an opportunity to speak on his own behalf; call witnesses; question witnesses testifying against him; present documents; and present evidence in mitigation); that his parole officer had no authority to dictate what action the parole board would take; and that it was much more likely that his parole would be revoked. Aware of what he was foregoing, Adams nonetheless waived the final revocation hearing. He admitted to the conduct charged in the notice, reciting that he did so freely and voluntarily and

with full knowledge of the consequences. He confirmed that he was not promised anything in exchange for his waiver and that he was not under the influence of drugs or alcohol. Adams specifically acknowledged that he had been given an opportunity to consult with counsel prior to waiving these rights.

Upon its review, the parole board noted that Adams had waived the probable cause hearing, admitted his guilt, and waived the final revocation hearing. It found that Adams's failure to comply with the conditions of his parole constituted a significant risk to the community and that he could not be appropriately managed in the community. Consequently, by decision entered on February 13, 2020, Adams's parole was revoked. He was informed that he or his legal representative could submit a request for reconsideration within twenty-one days of the parole board's decision.

On February 13, 2021, Adams filed a complaint in the Franklin Circuit Court seeking declaratory and injunctive relief. Represented by the Department of Public Advocacy, Adams alleged (among other things) that he would not have signed either the waiver of counsel or the admission of guilty had he known that he "could not rely on the Parole Board issuing a minor sanction." He contended that the board's revocation procedures violated his constitutional right to due process and that his waivers were not made knowingly, voluntarily, and intelligently -- despite his recitation to the contrary. He argued that he should

not have been permitted to give up his rights without a formal colloquy in which he made a personal appearance before a decision-maker and verbalized his understanding of the waivers. He requested the court to order the parole board to vacate its order of revocation.

On March 15, 2021, the parole board filed a motion to dismiss the action as moot. It explained that Adams had been released on mandatory re-entry supervision on March 1, 2021, and that -- absent violation of his supervision requirements -- he would remain free. At the hearing, Adams's counsel indicated that she had been unable to contact Adams since his release from custody. The circuit court ordered the parole board to provide counsel with Adams's contact information. The court gave counsel additional time to consult with Adams and to file a written response to the parole board's motion.

On April 8, 2021, counsel for Adams responded to the motion to dismiss. Without addressing or explaining how the initial revocation proceeding remained relevant, counsel indicated that the circuit court action was not moot because Adams was again in custody.

On April 13, 2021, the parole board filed a second motion to dismiss the action as moot. It explained that Adams's mandatory re-entry supervision had not been revoked. Instead, Adams was now incarcerated because he had been arrested on **new** felony charges. The parole board said that there was no procedure

-6-

by which it could now release Adams from custody. Counsel for Adams responded, arguing that the action was not moot because his mandatory re-entry supervision plan could still be revoked by the parole board at any time. In the alternative, counsel contended that the contested issues were capable of repetition yet typically evaded review -- qualifying as an exception to the mootness rule. *Commonwealth v. Hughes*, 873 S.W.2d 828 (Ky. 1994). Adams requested the court to declare: that the evidence was insufficient to justify revocation of his parole; that his state and federal due process rights were being violated; and that his waivers and admissions were not made knowingly, voluntarily, and intelligently. He sought reinstatement of his parole and an injunction requiring the parole board to adopt revocation procedures that comport with due process.

In an order entered on April 29, 2021, the Franklin Circuit Court dismissed the action. The court made several significant observations. The controversy existing between the parties at the time that Adams's parole was revoked had ended when Adams was re-released on mandatory re-entry supervision. Any attempt by the parole board to revoke Adams's release on mandatory re-entry supervision would require a fresh proceeding, and a legal challenge as to issues related to that process was premature. Moreover, the new felony charges and Adams's subsequent re-incarceration rendered the action moot. The circuit court specifically rejected the argument that the issues could be

addressed under the standard of "capable of repetition, yet evading review" -- a noted exception to the mootness rule. This appeal followed.

On appeal, Adams argues that the circuit court erred by dismissing the action. He contends that exceptions to the mootness rule apply to the disputed issues. We disagree.

"As our courts have long recognized, '[a] 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy.'" *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014) (quoting *Benton v. Clay*, 192 Ky. 497, 233 S.W. 1041, 1042 (1921)). The circuit court concluded that the controversy existing between the parties (when the declaratory judgment action was commenced) had ended upon Adams's release from custody on mandatory re-entry supervision. It did not err in that conclusion. Resolution of his complaints about the parole revocation proceedings preceding his release from custody would have no practical legal effect whatsoever on his subsequent re-incarceration on new charges. Because there were no consequences to the disputed parole revocation proceedings, Adams retained no personal stake in the outcome of the civil action. His action against the parole board was rendered moot.

Nevertheless, Adams contends that the circuit court erred by failing to consider his challenge to the parole board's failure to provide him with counsel

before he was "forced to decide whether to waive his hearings" because the action is subject to the "voluntary cessation" exception to the mootness rule. Pursuant to this exception to the mootness rule, an action may proceed notwithstanding the defendant's voluntary cessation of the challenged action. *See Morgan*, 441 S.W.3d 94. The exception is intended to thwart a defendant's attempt to manufacture mootness in an effort to manipulate or to circumvent a court's authority to render judgment. *Id.*

Adams contends that the voluntary cessation exception applies because the parole board is merely choosing not to revoke his release based upon the new charges. This argument is unpersuasive in light of the facts as recited. Moreover, it was not presented to the circuit court. Perhaps more importantly, the parole board states in its brief that Adams finally completed his sentence on October 16, 2021, and that he is no longer subject to its authority. Adams's reply brief fails to address how completion of his sentence affects this argument. The parole board's authority over Adams's release expired with the completion of his sentence. Therefore, there is no basis to argue or to conclude that it *voluntarily* ceased the disputed activity in an effort to manufacture mootness. The exception does not apply as a matter of law because it does not exist as a matter of fact.

Next, Adams contends that the circuit court erred by failing to consider his arguments because the issues are "capable of repetition, yet evading

review[.]" *Id.* at 100 (quoting *Lexington Herald-Leader Co., Inc. v. Meigs*, 660 S.W.2d 658, 661 (Ky. 1983)). For the "capable-of-repetition" exception to the mootness rule to apply, "(1) the challenged action must be too short in duration to be fully litigated prior to its cessation or expiration, and (2) there must be a reasonable expectation that the same complaining party will be subjected to the same action again." *Id.* (citing *Philpot v. Patton*, 837 S.W.2d 491 (Ky. 1992)).

Parole revocation proceedings are frequently subject to continuances and are not necessarily so brief that a challenge to the procedure employed cannot be fully litigated in the courts. More significantly, Adams is no longer on parole and is not subject to the revocation proceedings that he sought to challenge in the circuit court. Furthermore, there is no reasonable expectation that he will be subjected to the same disputed action by the parole board again. Not only would Adams have to be paroled again before he could be called upon to participate in revocation proceedings, but he would also have to violate his parole again. There is no reasonable expectation that Adams will be subject to parole revocation proceedings in the future. Adams himself has control over such an eventuality based on his volitional behavior. Therefore, the "capable-of-repetition" exception to the mootness rule does not apply. The circuit court did not err by refusing to apply this exception.

Finally, Adams contends that the public interest exception to the mootness rule applies. The Supreme Court of Kentucky applied this exception in *Jones v. Bailey*, 576 S.W.3d 128 (Ky. 2019). In *Bailey*, a convicted sex offender (Bailey) was released from prison on post-incarceration supervision. As a requirement of his release, he was required to complete a sex offender treatment program. When Bailey failed to complete the treatment program, he received notice of a preliminary revocation hearing. At the hearing, Bailey was represented by counsel and was allowed to present witnesses and evidence, including mitigating testimony. The hearing officer found probable cause to believe that Bailey had violated a condition of his release. Thereafter, the parole board revoked Bailey's release.

However, a series of serious omissions had occurred. Bailey had not been provided notice of the time and place of the final revocation hearing; he did not have counsel to represent him at that hearing; and he was not permitted to present witnesses or further testimony related to the alleged violations. During the appellate process, the term of Bailey's post-incarceration supervision expired. The Supreme Court of Kentucky concluded that Bailey's request to remand the case for a new revocation hearing was rendered moot. However, the Court determined that the "public interest" exception to the mootness rule applied and reviewed Bailey's due process arguments.

-11-

In order to apply the "public interest" exception to mootness, the reviewing court must find three elements present: (1) a question involving a public nature; (2) a need for an authoritative determination for the future guidance of public officers; and (3) a likelihood of future recurrence of the question. In *Commonwealth v. Collinsworth*, 628 S.W.3d 82, 87 (Ky. 2021), the Supreme Court of Kentucky warned that the public interest exception requires not only public questions and issues capable of repetition -- but also that it must be used only where a demonstrated need justifies a court's ruling. Otherwise, the public interest exception "would be so broad as to virtually eliminate the notion of mootness." *Id.* (citing *Morgan*, 441 S.W.3d at 102). The Court observed that "we have carefully cabined our review for instance to matters of first impression, such as *Lehmann v. Gibson*, [482 S.W.3d 375 (Ky. 2016)] wherein this Court invoked the 'public interest' exception to answer the entirely novel question of staying civil discovery until related criminal prosecutions are concluded." *Id.*

Precedent established by the Kentucky Supreme Court addresses the due process issues raised by Adams. In *Bailey*, *supra*, the Court considered the constitutional requirements of any parole revocation process. It set forth a litany of the protections to which a defendant is entitled: that a probable cause hearing must be conducted promptly at or near the place of the alleged violation, or arrest; that the probable cause determination be made by an independent hearing officer; that

the offender be given notice of the alleged violations; that a hearing will take place, and that its purpose is to determine whether there is probable cause to believe he has committed a violation; that the offender be entitled to be present and speak on his own behalf at the hearing; that he be given an opportunity to present documents and witnesses who can provide relevant information; and that if a risk of harm is not created by disclosure of the informant's identity, he is entitled to have the witness (upon whose statements the revocation notice is based) appear for questioning; that there be a summary of the hearing by the fact-finder; and, finally, that there be a determination whether there is probable cause to hold the offender for a final revocation hearing.

The *Bailey* Court held that due process requires that the parole board: inform the offender of his right to request counsel to represent him at a final hearing; conduct a constitutionally required final evidentiary hearing prior to revocation; provide the offender timely notice of the time and place of that final hearing; consider the evidence and determine (pursuant to the preponderance of the evidence standard) whether the offender committed the alleged violation(s); and timely inform the offender in writing of the board's decision, including the evidence relied upon and reasons for the decision.

Thus, authoritative guidance is readily and amply available concerning the panoply of due process rights afforded an offender at parole

-13-

revocation proceedings. Consequently, we cannot conclude that Adams has demonstrated a need justifying a judicial decision in this case. The circumstances do not constitute a public interest exception to the mootness doctrine.

Having considered the facts and the various exceptions to the mootness doctrine, we are satisfied that the circuit court properly dismissed this case as moot. And we dismiss this appeal as moot.

We order that this appeal be, and it is hereby, dismissed as moot.

_____
Judge, Court of Appeals

ALL CONCUR.


BRIEFS FOR APPELLANT:

Katelyn E. Price
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Edward A. Baylous II
Frankfort, Kentucky